John L. McMAHON, Jr. et al., Appellants,

v.

John J. CHRISTMANN, et al., Appellees.

No. 6543.

Court of Civil Appeals of Texas.

Amarillo.

Dec. 19, 1955.

Rehearing Denied Jan. 16, 1956.

James E. Prothro, Wichita Falls, Turpin, Kerr & Smith, Midland (Emil C. Rassman, Midland, of counsel), for appellants.

Paul New, Denver City and Crenshaw, Dupree & Milam, Lubbock, for appellees.

MARTIN, Justice.

This suit involves the construction of an oil and gas lease containing a clause whereby appellants reserved unto themselves an overriding oil and gas royalty. The suit was filed by appellants, John L. McMahon, Jr., Joseph K. McMahon, Myra McMahon Bullington and her husband, Ralph E. Bullington, against appellees, John J. Christmann, J. M. Welborn, F. M. Tate, Stanolind Oil Purchasing Company and Shell Oil Purchasing Company. The two oil companies appear only as stakeholders of the funds held by them from production on the leased premises.

It was stipulated by the parties that appellants owned an undivided one-sixth (⅙) interest in and to the oil, gas and other minerals under the Northwest one-fourth (NW¼) and the West half (W½) of the Northeast one-fourth (NE¼) of Section Twenty-one (21), Block K, Public School Land, Yoakum County, Texas. In the lease of their interest, appellants in the granting clause of such lease devised, leased and let and granted unto lessees the tract as described above and containing 240 acres, more or less. However, the lease contains a clause:

"If said lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the *royalties* and rentals herein provided for shall be paid the said lessor only in the proportion which lessor's interest bears to the whole and undivided fee."

Appellants prepared the following overriding royalty clause and attached it to the lease, to-wit:

"The Lessors herein reserve unto themselves, their heirs and assigns, without reduction, as an overriding royalty, a net ½nd of ⅞ths of all oil or gas produced and saved from the above described premises, * * *."

The above provisions govern the determination of the appeal when considered in conjunction with the warranty clause in the lease.

There is no controversy as to appellants' right to the usual one-eighth (⅛) royalty on their one-sixth (⅙) mineral interest in the leased premises. But, under the above-quoted overriding royalty provision, appellants sought to recover one-thirty-second (1/32) of the total oil production from the entire premises hereinabove described. The trial court withdrew the case from the jury, construed the lease in issue and awarded appellants as their overriding royalty interest one-sixth (⅙) of one-thirty-second (1/32) of eight-eighths (⅞) of the oil production from the leased premises. Appellants perfected an appeal from this judgment and present nine points of error.

It is admitted by appellants, and stipulated by the parties, that appellants own only an undivided one-sixth (⅙) interest in and to the oil, gas and minerals under the 240 acre leasehold. Appellants admitted in oral argument before this Court that, in granting and conveying the minerals under the entire leasehold premises of 240 acres, they were saved from liability for a breach of the warranty contained in the lease solely by the proportionate reduction clause quoted above. However, this is the sole virtue appellants attribute to the proportionate reduction clause as they contend in this cause that their one-thirty-second (1/32) overriding royalty is not to be paid in the proportion which their interest bears to the whole and undivided fee but is to be paid on all the oil produced from the 240 acre leasehold. But appellants must concede that the "premises" they leased, viewed in the light of the proportionate reduction clause,

constitute only an undivided one-sixth (1/6) interest in the minerals under the 240 acre tract. Therefore, the only sound construction of the royalty clause referring to all oil or gas produced and saved "from the above described premises" is that such clause refers to no premises other than the one-sixth (1/6) interest in the minerals actually owned by appellants. Or, more appropriately, since it is admitted by appellants that they own only an undivided one-sixth (1/6) of the minerals under the 240 acre leasehold, their overriding royalty must be proportionally reduced under the pertinent provision in the written lease.

Appellants cannot legally have their cake and eat it, too. Since appellants own only an undivided one-sixth (1/6) of the minerals under the 240 acre leasehold, they admit they must rely upon the proportionate reduction clause to escape liability for breach of their warranty contained in the lease of the 240 acres. At the same time, appellants assert their one-thirty-second (1/32) overriding royalty is not subject to the same proportionate reduction clause and that they are entitled to one-thirty-second (1/32) of all the oil produced from the 240 acre leasehold. In seeking to reconcile their incongruous theories, appellants contend that the one-thirty-second (1/32) overriding royalty is not, in fact, royalty but is a bonus and therefore not subject to the clause in the lease providing "the royalties and rentals herein provided for shall be paid the said lessor only in the proportion which lessor's interest bears to the whole and undivided fee." The overriding "royalty" continues throughout the term of the lease as executed by appellants and is royalty and is not a bonus as asserted by appellants. "We believe, however, that a definition more nearly fitting what is ordinarily meant by the unqualified term royalty when used in the oil and gas industry would include as a necessary element of such usual or ordinary royalty the continuance of the share of the product or profit throughout the term of the lease." State Nat. Bank of Corpus Christi v. Morgan, Tex.Com. App., 135 Tex. 509, 143 S.W.2d 757, 761,

[5]; Patterson v. Texas Co., 5 Cir. 131 F. 2d 998, Syl. 1–5.

■ The overriding royalty, as provided for in the clause appellants prepared and attached to the lease, is in fact royalty and therefore is subject to the proportionate reduction clause in the lease as hereinabove quoted and discussed. It also follows that the cause of R. Lacy, Inc., v. Jarrett, Tex. Civ.App., 214 S.W.2d 692, relied upon by appellants as governing the issue on appeal is not a controlling authority here as such case involves an oil payment of limited duration. Further, in the written lease here in issue, the appellants specifically provided that "the royalties * * * herein provided for shall be paid the said lessor only in the proportion which lessor's interest bears to the whole and undivided fee." The case of Pollock v. McAlester Fuel Co., 215 Ark. 842, 223 S.W.2d 813 by the Supreme Court of Arkansas, also cited by appellants, comports with the result reached herein.

It will not be amiss to discuss in detail the overriding royalty clause as drawn by appellants and attached to the lease in issue, particularly as to the provisions therein as emphasized by appellants in this appeal. The provision will be again quoted with emphasis as placed on the terms thereof by appellants but it is the opinion of the Court, as discussed hereinafter, that appellants failed to emphasize a most material and controlling word used in the clause:

"The Lessors herein reserve unto themselves, their heirs and assigns, *without reduction*, as an overriding royalty, a net 1/32nd of 6/8ths of *all* oil or gas produced and saved *from the above described premises * * *.*"

"Without reduction", as recognized by all parties, may well refer to a reduction in the royalty in the event production dropped below a given quantity, or to reduction of the royalty in the event of pumping expense, or to reduction due to transportation of the oil from the lease to the pipeline or railhead, or to use of the oil and gas for

fuel, or to cost of treating the oil to make it merchantable, to lifting costs, to pooling agreements or to ad valorem taxes. Also, such words could have been placed in the overriding royalty clause merely to emphasize that since lessors' interest was already subject to payment to lessors "only in the proportion which lessor's interest bears to the whole and undivided fee" that no reduction should be effective other than that provided for in the body of the lease. In view of the fact that the original provision in the lease as to the overriding royalty provided for one-thirty-second ($\frac{1}{32}$) of seven-eighths ($\frac{7}{8}$) of the oil, it is easily understood that the lessors (appellants) changed the seven-eighths ($\frac{7}{8}$) to eight-eighths ($\frac{8}{8}$) because they desired their overriding royalty clause to apply to their entire one-sixth ($\frac{1}{6}$) interest in the minerals. No sound reason can be ascribed for the emphasis lessors placed on "all" as it is a mere re-iteration of eight-eighths ($\frac{8}{8}$). The words "above described premises" as stated in the royalty clause cannot correctly refer to the entire 240 acre leasehold estate as the proportionate reduction clause specifically limits the "royalty" payable to appellants to their one-sixth ($\frac{1}{6}$) mineral interest in the leased premises.

As examination of appellants' brief reveals that they did not emphasize a word in the overriding royalty clause which apparently they recognize must be eliminated in effect to entitle them to one-thirty-second ($\frac{1}{32}$) of all the oil and gas produced and saved from the 240 acre leasehold. The word which is not emphasized by appellants but is recognized by them as vital to their interest in the royalty is the word "reserve" as found in the first line of the overriding royalty clause. Also, the word "reserve" was not discussed by appellants under their points of error on the issue of the legal construction of the overriding royalty clause. But, in appellants' discussion of another issue in the cause, they present certain propositions that reveal the major, controlling element of the overriding royalty clause is the word "reserve" and that it is so recognized by appellants. On Page 58 of appellant's brief is found appellants'

statement: "And Christmann and Welborn (lessees and appellees here) could have *contracted* to pay to appellants $\frac{1}{8}$th, $\frac{3}{8}$ths or $\frac{5}{8}$ths of the production as a royalty or as an overriding royalty in the event of production." (Emphasis by appellants). This statement by appellants is a correct proposition of law but is not applicable to the cause before this Court. It is noteworthy that it is not asserted by appellants that appellees *so contracted* but merely that they *could* have contracted. Appellants further continued with, "For Christmann and Welborn contracted unequivocally that *they would reserve for appellants* $\frac{1}{32}$nd of $\frac{8}{8}$ths of all the oil produced from the 240 acres described in the lease, without reduction for any reason." (Emphasis by the Court). This statement is not supported by any evidence in the record as the written lease before this Court is the sole evidence in the cause. While it is true that Christmann and Welborn *could have contracted* to pay $\frac{1}{32}$nd of $\frac{8}{8}$ths of all oil produced from the 240 acres they did not so contract. Nor did Christmann and Welborn contract that *"they would reserve for appellants* $\frac{1}{32}$nd of $\frac{8}{8}$ths of all the oil produced from the 240 acres * * *."

The word "reserve" is vital to a proper construction of the overriding royalty clause. A reservation of royalty by a lessor does not constitute a contract whereby the lessees (appellees) "reserve for" lessors (appellants) such royalty but such reservation constitutes a withholding by lessor of a part of that which lessor already owned. "The word 'reserves' means to keep or retain; to keep what one already has." 37 Words and Phrases, page 185. It follows, as a sound principle of law, that lessors could not in their lease reserve unto themselves an overriding royalty interest greater than the mineral interest which they owned at the time of their execution of the reservation—the royalty as reserved must be carved from the mineral estate as owned by lessors (appellants).

Appellants only own an undivided one-sixth ($\frac{1}{6}$) of the minerals under the 240

acres yet they advance the theory that although they own only one-sixth (⅙) of the minerals under the 240 acres they reserved unto themselves a one-thirty-second (1/32) royalty interest out of all the minerals and oil under the 240 acre leasehold premises. The fallacy of this theory and reasoning can be demonstrated by merely reducing appellants' fractional interest in the minerals under the leasehold while at the same time increasing the over-all acreage in the same leasehold premises. By such action, it is readily apparent that, under appellants' theory, a point would be reached where appellants' one-thirty-second (1/32) overriding royalty interest as reserved from the oil produced from the leasehold would exceed appellants' fractional mineral interest in the leased premises. If the principle sought to be advanced by appellants were sound, it could never legally effect a reservation of overriding royalty which was in excess of appellants' original mineral interest. The fact issue as stated by appellants that lessees in the oil and gas lease could contract to deliver to lessors as royalty eight-eighths (⅞) of the oil as produced from the 240 acres does not likewise establish the legal principle that lessors, who own only an undivided one-sixth (⅙) of the minerals and oil under the leasehold, could reserve unto themselves as royalty eight-eighths (⅞) of the oil produced from the 240 acres.

■■ Appellants have stated in their briefs that the lease in issue is not ambiguous. Therefore, is must be construed under the terms of the lease as introduced in evidence and the trial court correctly withdrew the issue from the jury and construed the same as a matter of law. Appellants' points asserting error of the trial court in not admitting evidence extrinsic to the lease are overruled. Murphy v. Dilworth, 137 Tex. 32, 151 S.W.2d 1004; Benge v. Scharbauer, 152 Tex. 447, 259 S.W.2d 166.

Since appellants have conceded, in oral argument before this Court, that they must rely on the proportionate reduction clause to prevent a breach of their warranty clause in the lease, which is correct as a matter of law, their theory advanced here subjects them to the rule decreed by the Supreme Court in Duhig v. Peavy-Moore Lumber Co., Inc., 135 Tex. 503, 144 S.W.2d 878. In discarding the proportionate reduction clause and seeking to recover one-thirty-second (1/32) of the entire minerals or oil produced from the 240 acre tract, appellants would be estopped, as a matter of law, by their warranty from asserting an interest of more than one-sixth (⅙) of one-thirty-second (1/32) of the reserved royalty. However, a ruling is not required on this issue or on the issue as to failure of consideration as the proportionate reduction clause must be recognized and given proper legal effect.

■■ Appellants' theory and arguments in their brief have been treated somewhat in detail as no authority directly in point on the issue before the court has been cited. A discussion of appellants' theory points up the legal principle that should govern the issue between the parties. A thoughtful examination of the issue in the cause, in the light of sound legal principle, leads to the inescapable conclusion that a lessor in an oil and gas lease cannot therein legally reserve unto himself a royalty interest in excess of his mineral interest in the leased premises nor can a lessor in an oil and gas lease therein legally reserve unto himself a royalty out of minerals under the leased premises as not owned by him.

Appellants' points are overruled and the judgment of the trial court is affirmed.