**PATTERSON et al. v. TEXAS CO.**

No. 10168.

Circuit Court of Appeals, Fifth Circuit.

Dec. 7, 1942.

Rehearing Denied Jan. 26, 1943.

Jack M. Randal and J. I. Kilpatrick, both of Lubbock, Tex., for appellants.

H. S. Garrett, of Fort Worth, Tex., and W. D. Wilson and Durwood H. Bradley, both of Lubbock, Tex., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellants, plaintiffs below, grantors in a mineral deed[1] to 1,600 acres of land comprising 2½ sections in Yoakum County, Texas, claiming that appellee, as assignee[2] of its grantee, had leased the land for a bonus,[3] brought this suit to recover the

[1] The deed, dated March 24, 1936, was to the Mineral Investing Corporation, a wholly-owned subsidiary of The Texas Company. It provided that appellants were to have and receive a royalty of ½₂ of the interest conveyed by the deed in event of production. It further provided:

"It is agreed that the Mineral Investing Corporation, its successors or assigns, shall never be under obligation to lease said land for oil, gas or mineral purposes but should the Mineral Investing Corporation, its successors or assigns, lease said land for oil, gas or mineral purposes, then one-fourth (¼) of the bonus paid for said lease and one-fourth (¼) of the rentals paid under said lease shall be paid to the Grantors herein, their heirs or assigns, as a part of the consideration for this conveyance. It being understood that the amount of bonus, rentals and royalties for which the Mineral Investing Corporation may execute a lease shall be at its sole discretion."

[2] On July 20, 1937, Mineral Investing Corporation, in consideration of the cancellation of its stock, conveyed its mineral interest in these lands to The Texas Company. On December 26, 1938, The Texas Company, for the purpose of giving lease form to these mineral interests, conveyed them to Tom Freeman, as Trustee, and on December 30, 1938, Freeman, as Trustee, leased the 2½ sections to The Texas Company by three separate leases. Though each lease recited a consideration of $10.00 and other valuable consideration, no consideration was in fact paid. The transaction took this form in order to put these interests in shape, to quote Mr. Cole, Division Manager of The Texas Company, in order "to make a deal on all of the properties as a whole within a large area."

[3] On December 31, 1938, The Texas Company assigned to Aloco Oil Company forty-five leases, comprising a total, including these three leases, of 15,846 acres, but limiting the assignment to a depth of 5,500 feet. There was no production, or development for production, on these three leases, but on the other leases there were seventeen completed and producing wells. The agreement between

one-fourth thereof provided for in their deed. There was an alternative prayer for "the fair cash market value of the lease value of their interest" and for a cancellation of the leases to defendant as to depths below 5,500 feet. Defendant denied both, that it had received anything by way of bonus for the Patterson leases except the contingent bonus agreement of $3,500 for each well drilled, and that these leases had any bonus value, and set out fully the facts of the transaction between it and Aloco. There was a trial to a jury with a motion by plaintiffs for a directed verdict for 400/15,846 of the cash consideration paid, and the overriding royalties and rights accrued and to accrue to the defendant under the agreement with Aloco. The motion overruled, there were jury findings fully supported by the evidence; that the $441,-445.72 paid The Texas Company by Aloco was not bonus but consideration for the 17 completed oil wells on lands other than plaintiffs; that no bonus was paid for the leases on plaintiffs' land; and that they were without bonus value. Plaintiffs moved for judgment for 400/15,846 of the cash consideration received and the overriding rights and royalties reserved by defendant under its agreement with Aloco, and that the lease from Freeman to defendant on its land as to a depth below 5,500 feet; and, in the alternative, for one-fourth of the cash received by, and one-fourth of the overriding royalty and rights reserved to, defendant in respect of the plaintiffs' lands; and for one-fourth of the market value on a bonus basis of an oil, gas and mineral lease on those lands. This motion overruled, there was a judgment for defendant, and plaintiffs have appealed. Below appellants took the position; that when the defendant in one instrument conveyed all the leases, including the ones on plaintiffs' lands, it created a kind of confusion or commingling of leases and of interests so that plaintiffs became entitled to an

aliquot part of the whole consideration; that the recitation of consideration in the agreement defendant made with Aloco conclusively established that the recited cash payment was a bonus for the leases as a whole; that parol evidence as to the true consideration could not be received; and that it was error, therefore, not to instruct a verdict for plaintiffs for one-fourth of that part of the consideration which their acreage bore to the acreage as a whole. In the alternative, they contended that the instrument, by which they sold their mineral interest, made The Texas Company, as assignee, a kind of trustee for them and obligated it in leasing the lands to obtain their bonus value for plaintiffs. They take the same positions here. The instrument by which plaintiffs sold is without ambiguity or need for construction. It plainly and clearly reserves to plaintiff a royalty interest and as plainly and clearly provides that if grantee, its successors or assigns, obtains a bonus for leasing the minerals, plaintiffs shall have one-fourth thereof. It as plainly and clearly provides though that no obligation to lease the land or obtain a bonus is imposed, and leaves to the discretion of grantee whether, and the terms upon which, the land should be leased. It clearly gives plaintiffs a one-fourth interest in any bonus which may be reserved, and plaintiffs are, therefore, entitled to inquire and have determined in connection with any leasing made of the land what the true facts are. The Texas Company could not, therefore, by any form of agreement, have prevented plaintiffs from obtaining its share of a bonus if one was reserved, nor could plaintiffs claim a bonus on their land under instruments executed by The Texas Company, no matter what the terms of those instruments if, in fact, no bonus was received.

Consideration may always be inquired into, even as to the parties to in-

The Texas Company and Aloco recited a consideration of $441,445.72 cash and "the faithful and full performance and compliance by Aloco, assignee, of all the limitations, covenants, conditions and obligations set out in the agreement, assignor, The Texas Company, retaining and reserving overriding royalties provided for therein". Among the provisions of the assignment agreement was one for payment of rentals and for a contingent bonus of $3500.00 for each well drilled on each particular tract or tracts. It was established by uncontroverted proof that the $441,445.72 stated in the agreement as consideration, was not a bonus for making any of the leases, but was consideration for the improvements which had been placed by The Texas Company on certain tracts of leased lands and represented the cost of drilling 17 wells plus the expense of operating them to December 31, 1938, minus the value of the oil which The Texas Company had already obtained from the wells up to that time.

struments.[4] As regards persons not parties or privies to, but whose rights are affected by them, the parol evidence rule, precluding inquiry into their true meaning and scope has no application.[5] Plaintiffs could not be bound by the terms of instruments between The Texas Company and Aloco, if their terms are contrary to the facts. Likewise, their terms, if not in accordance with the facts, cannot advantage plaintiffs. Upon a full and fair charge and on evidence fully sustaining the verdict, the issue the pleadings presented, whether a cash bonus was paid for the Patterson leases, was submitted to the jury and found against plaintiffs. In addition, the jury found that the Patterson leases had no cash bonus value. If, therefore, appellants' alternative position, that if no bonus was received appellee was bound to obtain reasonable bonus value for the leases and was liable to them for that value though not received by it, was well taken, and we by no means hold that it was (compare Cowden v. Broderick & Calvert, 131 Tex. 434, 114 S.W.2d 1166, 117 A.L.R. 61; Cullum v. Ford Motor Co., 5 Cir., 107 F.2d 945; and Deeds v. Deeds, 196 P. 1109), appellant could not complain of the judgment, for the jury, on evidence supporting its finding, found that they had no cash value. In the face of these findings that no cash bonus was received for the leases and that they had no cash bonus value, it would be in complete contradiction of the verdict for the court to award plaintiffs a recovery. Appellants' claim that the overriding royalties reserved are bonus and not royalty is no better founded. These reservations of a share of the product or the profit, or both, continue throughout the term of the lease, and, therefore, come strictly within the accepted definition of "royalty" as "a share of the product or profit reserved by the owner for permitting another to use the property". O'Fiel v. Brook, Tex.Civ.App., 98 S.W.2d 266, 269; Curlee v. Anderson & Patterson, Tex.Civ.App., 235 S.W. 622; Texas Company v. Fontenot, 200 La. 753,

8 So.2d 689. In State National Bank of Corpus Christi v. Morgan, 135 Tex. 509, 143 S.W.2d 757, 761, the court, after quoting the definition of royalty as "a share of the product or profit reserved by the owner for permitting another to use the property", continues: "An oil payment reserved by a lessor comes within the broad terms of this definition. We believe, however, that a definition more nearly fitting what is ordinarily meant by the unqualified term royalty when used in the oil and gas industry would include as a necessary element of such usual or ordinary royalty the continuance of the share of the product or profit throughout the term of the lease. * * * The continuance of the royalty throughout the life of the lease is made the basis for drawing a distinction between bonus and royalty in Geller v. Smith, 130 Cal.App. 485, 20 P.2d 102, 104, where the term 'bonus' as applied to an oil and gas lease is thus defined: 'A sum of money paid by a lessee to the lessor in consideration for the execution of a lease, as distinguished from the return or royalty reserved by the lessor to be paid by the lessee through the term of the lease.'"

Appellants' final contention made in the pleadings and on the motion for judgment after verdict, but not supported by any evidence or otherwise adverted to in the course of the trial, that the leases should be cancelled as to depths below 5,500 feet, presents nothing here on which relief could, or should, be granted. For wholly apart from the fact that no evidence was offered and no findings were made on this issue tendered by it, no judgment was rendered in regard to it. The judgment denying plaintiffs' recovery on their bonus claims was right, and it is affirmed, without prejudice, however, to plaintiffs' right to sue for the relief, if any to which they may be entitled, in respect of cancellation of the lease from Freeman to defendant as to depths below 5500 feet.

Affirmed.

---

[4] Taylor v. Merrill, 64 Tex. 494; Wigmore on Evidence, Sec. 2433, p. 3431; McCormick & Ray, Texas Law of Evidence, p. 969, sec. 730; 22 C.J. 1161;

32 C.J.S., Evidence, § 948, 20 Am.Jur. Sec. 1111-1112; D. Sullivan & Co. v. Schreiner, Tex.Civ.App., 222 S.W. 314.

[5] 20 Am.Jur. 1129-30-31.