**L. H. GRIFFITH et al., Appellants,**

v.

**W. H. TAYLOR, Appellee.**

No. 6535.

Court of Civil Appeals of Texas.

Amarillo.

Nov. 21, 1955.

Rehearing Denied Dec. 19, 1955.

Stone & Stone, Amarillo, Braly & Braly, Pampa, Cochran, Dudley, Fowler, Rucks, Baker & Jopling and Joseph G. Rucks, and Embry, Crowe, Tolbert, Boxley & Johnson and DeWitt B. Kirk, Oklahoma City, Okl., for appellants.

Sanders, Scott, Saunders & Smith, Amarillo, for appellee.

NORTHCUTT, Justice.

This action was originally brought by appellee against several parties as defendants to determine and settle title matters with reference to certain mineral rights. Although there were about 35 defendants in the original suit there are only three of the defendants as appellants here, namely L. H. Griffith, Hightower and the Harrises. None of the other defendants appealed or objected to the trial court's judgment. The real contention of the parties to this appeal is that appellants contend they are entitled to their respective interests in 3/16 of the oil rights retained by appellee under certain leases and the appellee contends that they are entitled to their respective interests in only the 1/8 of the royalty. The trial court sustained the contention of the appellee and held the appellants were only entitled to their respective interests in the 1/8 royalty and that the appellee was entitled to the 1/16 interest retained by him in certain leases above the 1/8 royalty retained. From this judgment, appellants perfected this appeal.

Appellant, L. H. Griffith, presents his appeal upon the following proposition:

*"Appellant's Propositions*

*"First Proposition*

"The Court erred in holding that the one-sixteenth (1/16) perpetual interest in production created by paragraph 11 of the 1953 oil and gas lease was bonus belonging exclusively to W. H. Taylor,

rather than royalty in which this appellant is entitled to participate. (Germane to all points on appeal.)

### "Second Proposition

"The Court erred in admitting parol evidence to determine the intention of the parties in the execution of the mineral deed from W. H. Taylor to P. G. Malone. (Germane to points I, II, III, XII, XIII, XVI, XVII and XVIII.)

### "Third Proposition

"The Court erred in admitting parol evidence to determine the intention of the parties in the execution of the 1946 oil and gas lease. (Germane to Points VI, VIII, X, XII, XIII and XVI.)

### "Fourth Proposition

"The Court erred in admitting parol evidence to determine the intention of the parties in the execution of the 1953 oil and gas lease. (Germane to Points I, II, III, IV, VII, IX, XI and XV.)

### "Fifth Proposition

"The trial court erred in overruling the motion of appellant to quash the deposition of W. H. Taylor given in response to purported adverse party interrogatories. (Germane to Point V.)"

The Hightower and Harris appellants adopted the propositions and brief of L. H. Griffith and added one additional proposition as follows:

### "Sixth Proposition

"The Court erred in holding that W. H. Taylor discharged his trust in behalf of the non-participating royalty owners (Hightower and Harris interest) by executing the various 1953 oil and gas leases. (Germane to Point XV.)"

The appellee, W. H. Taylor, was the owner of the land upon which the oil leases cover. W. H. Taylor had executed a certain oil and gas mining lease in favor of Humble Oil & Refining Company as lessee. W. H. Taylor sold and transferred certain oil interests to one P. G. Malone. Said transfer reading as follows:

"Know All Men By These Presents: That I, W. H. Taylor, of the County of Archer, State of Texas, have granted, bargained, sold and conveyed, and subject to the exceptions and reservations hereinafter contained, do by these presents, grant, bargain, sell, set-over, assign and deliver unto P. G. Malone an undivided one-half (½) interest in and to all of the oil, gas and other minerals in and under and that *my* be produced from the following described land,s situated in Gray County, Texas, to-wit: Northwest Quarter (NW¼) of Section Twenty-two (22), Block B-2, H&GN R. R. Co. Survey, said land above described now being under a certain oil and gas mining lease, executed in favor of Humble Oil & Refining Company, lessee; it is understood and agreed that this sale and conveyance is made subject to said oil and gas mining lease and all of the terms thereof, but covers and includes one-half (½) of all of the one-eighth (⅛) oil royalties and gas rental on said lands due and to be due under the terms of said lease, and any and all renewals and extensions thereof, and is further made subject to all future oil and gas mining lease– upon or covering said land, thereof or any part thereof, which may be hereafter given as hereinafter provided.

"In the event said lease, for any reason becomes cancelled, or forfeited, or shall expire, then and in that event, the oil, gas and mineral privileges in and under that part of said land hereinabove described, or any part thereof, under such oil and gas mining lease, which shall so become forfeited, or cancelled, or shall expire, shall thereupon be owned jointly by the said W. H. Taylor and the said P. G. Malone, the said W. H. Taylor, onwing an undivided one-half (½) interest and the said P. G. Malone owning an undivided one-half (½) interest in all oil, gas and

other minerals in and under and upon said land, but subject to the exceptions, reservations, and conditions hereinafter set forth, and subject to such future oil and gas mining leases which may be hereafter given upon said land, or any part thereof, as herein provided.

"And the said W. H. Taylor expressly excepts from this conveyance and reserves unto himself, his heirs and assigns, all of the delay rentals, which may be paid under the terms of the aforesaid oil and gas lease, and under all future oil and gas leases on said land, or any part thereof, for the privileges of deferring the commencement of a well, or wells, under the terms of said lease, and any and all bonus money which may or shall be paid to the said W. H. Taylor as a consideration for any and all oil and gas leases upon said lands, or any part thereof, which may be hereafter given. And the said W. H. Taylor expressly excepts from this conveyance and reserves unto himself, his heirs and assigns, from the grant hereby made the full and complete right to make, execute, acknowledge and deliver to such lessee or lessees, as he may elect, an oil and gas mining lease or leases upon and covering the lands hereinbefore described, or any part thereof, without the joinder of the grantee herein, his heirs or assigns upon the termination, cancellation, forfeiture or surrender of said oil and gas lease hereinbefore mentioned now upon said lands, or any part thereof, provided and conditioned that a royalty of not less than the equal one-eighth ($\frac{1}{8}$) part of the oil, and a royalty of not less than one-eighth ($\frac{1}{8}$) of the market value of the gas and casinghead gas, or of one-eighth ($\frac{1}{8}$) of the net proceeds of the sale of such gas or casinghead gas, is reserved to the lessor in such oil and gas mining lease, or leases. And the grantor herein, the said W. H. Taylor, expressly excepts from this conveyance and reserves unto himself all bonus money or other consideration which may or shall be received by him as a bonus for such oil and gas mining lease, or leases and all delay rentals which may become payable under such lease, or leases, for the privilege of deferring the commencement of a well, or wells, and the said W. H. Taylor may and shall keep and retain for his own use and benefit all bonus moneys, funds, or other consideration received by him as a bonus for such oil and gas mining, lease or leases and all of said delay rentals which may become payable thereunder, and shall not be held accountable to the grantee herein, his heirs or assigns, for any part of said consideration, bonus, or delay rentals. And it is hereby expressly agreed by the parties hereto that in the event said oil and gas mining lease hereinbefore mentioned now upon said land, or any part thereof, shall expire, or shall be forfeited, cancelled or terminated, then and in that event, the said W. H. Taylor shall have the full and complete right to retain all bonus or other consideration received therefor, and to keep and retain for his own use and benefit all delay rentals which may or shall be paid under the terms of said lease, or leases, for the privilege of deferring the commencement of a well or wells, provided and conditioned that the royalty reserved therein shall be in the amount or proportion hereinbefore stipulated and further provided that each and all of the other *ters* of said lease may be such as the said W. H. Taylor, his heirs or assigns, may see fit to execute, it being understood by the parties hereto that upon the execution and delivery of such oil and gas mining lease, or leases, by the said W. H. Taylor, his heirs or assigns, such lease, or leases, shall cover, convey and affect in its entirety all parts of the land hereinbefore described which may be embraced within the terms of such lease, or leases, and all oil, gas and other minerals, either or all of them therein or thereunder, including the undivided one-half ($\frac{1}{2}$) in-

terest in the same herein conveyed and transferred by the terms of this instrument; and the reservation by the said W. H. Taylor of his right to execute and deliver such lease, or leases shall be construed as a covemant running with the land, such reservation being made for the sole purpose of enabling the said W. H. Taylor, his heirs and assigns to make, execute and deliver an oil and gas mining lease, or leases, upon said lands, or any part thereof, without the joinder of the grantee herein, his heirs or assigns, in the event said lease hereinbefore described now upon said land, or any part thereof, shall expire, terminate, or be forfeited, or cancelled; and upon such expiration, termination, forfeiture or cancellation of said oil and gas lease hereinbefore mentioned, and now upon said land, or any part thereof, the grantee herein, the said P. G. Malone, hereby expressly authorizes the said W. H. Taylor, his heirs and assigns, to make, execute and deliver an oil and gas mining, lease, or leases, upon said land, or any part thereof, and retain all bonus money received therefor and all delay rentals paid thereunder, provided, however, that the royalty reserved to the lessor in such lease, or leases, shall be as hereinbefore set out, and the acceptance of this conveyance by the said P. G. Malone shall be conclusive evidence of his authorization of the said W. H. Taylor to execute such lease, or leases. It is understood, however, that the grantee herein, his heirs and assigns, shall receive and be entitled to one-half (½) of the royalty upon oil, gas and casinghead gas, which may be paid from or upon said lands hereinbefore described under such future oil and gas mining leases, if any.

"But it is expressly understood, agreed and stipulated that the royalties upon oil, gas and casinghead gas, which may become payable to the grantee herein under and by virtue of the terms of this instrument shall at all times be expressly limited to the particular tracts of land hereinbefore expressly described; and that this instrument shall not be construed as conveying or transferring any interest whatsoever in royalties upon or from any land other than the particular tract of land hereinbefore expressly described.

"To Have and To Hold the above described property, together with all and singular the rights and appurtenances thereunto in anywise belonging unto the said P. G. Malone, his heirs and assigns, forever, but subject to the reservations and exceptions hereinbefore contained, and I do hereby bind myself, my heirs, executors, and administrators to warrant and forever defend the same unto the said P. G. Malone, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof.

"And I *Do* hereby expressly covenant and warrant that the land hereinbefore described has never been used, occupied, or claimed by me as a homestead, my homestead now being in the county of Archer, State of Texas.

"In Testimony Whereof, witness my hand this 12th day of May, A. D. 1928.

"/s/ W. H. Taylor"

Appellant, L. H. Griffith, received his interest in said lease by transfer from P. G. Malone and could only recover the interest transferred to him of what rights Malone had. The interest of the other appellants were received by transfers from W. H. Taylor with like provisions as set out above in the transfer to P. G. Malone. It is the contention of all the appellants that when W. H. Taylor leased the different tracts of land and placed in each lease the following:

"11. In addition to the royalties provided in Paragraph 3, preceding, of this lease, Lessor reserves to himself, his heirs and assigns, as additional consideration and bonus royalty, an equal one-sixteenth (1/16) part of all oil which may be produced and saved by Lessee,

its successors and assigns, under and by virtue of this lease, delivery thereof to be made in the same manner as other royalty oil; and, on gas, including casinghead gas or other gaseous substance, produced from said land and sold or used off the premises or in the manufacture of gasoline or other products therefrom, an equal one-sixteenth (⅟₁₆) of the market value at the well of the gas so sold or used, provided that on gas sold at the wells this additional or bonus royalty on gas shall be one-sixteenth (⅟₁₆) of the amount realized from such sale. The additional or bonus royalty reserved on other minerals shall be an equal one-sixteenth (⅟₁₆) part of the minerals produced and saved or an equal one-sixteenth (⅟₁₆) part of the value of each unit of such minerals sold."

that he thereby retained an additional one-sixteenth (⅟₁₆) royalty above the one-eighth (⅛) royalty making in all three-sixteenths (³⁄₁₆) royalty interest and that they were entitled to recover their respective interests in three-sixteenths (³⁄₁₆) instead of one-eighth (⅛).

In the transfer to Malone under which L. H. Griffith secured his interest, it provides:

"It is *understood and agreed* that this sale and conveyance is made subject to said oil and gas mining lease and all of the terms thereof *but covers and includes one-half (½)* of *all* of the *one-eighth (⅛) oil royalty* and gas rental on said lands due and to be due under the terms of said lease, and *any and all renewals and extensions* thereof, and is further made subject to *all future* oil and gas mining lease upon or covering said land or any part thereof, which may be hereafter given as hereinafter provided."

W. H. Taylor further retained from said conveyance and reserved unto himself all bonus money or other consideration, provided and conditioned that a royalty of not less than the equal ⅛ part of the oil, and a royalty of not less than ⅛ of the market value of the gas and casinghead gas, or ⅛ of the net proceeds of the sale of such gas or casinghead gas, is reserved to the lessor in such oil and gas mining lease, or leases. Like reservations were retained in the transfers to the other appellants.

None of the parties pleaded fraud, accident or mistake or that the transfers were ambiguous but each of them were relying on the written instruments and what each intended or thought could have no bearing on what was actually transferred by the instruments. It cannot be successfully maintained but what W. H. Taylor had the right to do whatever he saw fit to do with any of the interest as to the leases provided he maintained the ⅛ royalty. We think it is clearly shown by the instruments that when it is provided specifically that it is understood and agreed that the sale covers and includes ½ of all the ⅛ oil royalties and it is provided that the grantee is to receive a certain portion of ⅛ royalty and then said instruments give the lessor the right to do the things as provided in these instruments and limit him only to reserve the ⅛ royalty, that it was clearly in the contemplation of the parties at the time that all that the grantees were receiving was their interest in the ⅛ royalty and by such specific limitation appellants waived any claim they might otherwise have had. Since it was retained by W. H. Taylor, he had the right to do whatever he saw fit to do with it and he could call it bonus, royalty or any other designation he might care to call it and it would be immaterial.

Appellants' assignments of error are overruled. Judgment of the trial court is affirmed.

MARTIN, Justice (dissenting).

The first paragraph of the conveyance executed by W. H. Taylor to P. G. Malone, as copied in the majority opinion, reveals that the conveyance is of an individed one-half interest in all oil, gas and other minerals in and under the Northwest Quarter

(NW ¼) of Section 22, such conveyance being subject to a then existing oil and gas lease providing for payment of a ⅛ royalty thereunder.

The second paragraph of the same conveyance provides that in the event such oil and gas lease to which the conveyance is subject and providing for ⅛ royalty, is cancelled or terminated, an undivided ½ interest in all oil, gas and other minerals shall be owned by each of the parties, P. G. Malone and W. H. Taylor. The conveyance, as to future leases, further provides in Paragraph Three thereof that in the event of the expiration, termination or cancellation of the said oil and gas lease then on the land that W. H. Taylor may execute and deliver all future oil and gas leases and retain the bonus and delay rentals as paid but that P. G. Malone, the grantee, "his heirs and assigns, shall receive and be entitled to one-half ½ *of the royalty* upon oil, gas and casinghead gas, which may be paid from or upon said lands hereinbefore described under such *future* oil and gas mining leases, if any." Under this last provision it is material that there is no limitation as to the royalty other than "one-half (½) of the royalty". Whether the royalty provided in the lease is ⅛ royalty or ¾₆ royalty is not material as to its division as Taylor specifically provided that Malone and his assigns would receive "one-half (½) of the royalty". Taylor could have stipulated that Malone and his assigns would receive only ½ of the usual ⅛ royalty on all future leases but he did not do this.

As permitted under the provisions of Paragraph Three in W. H. Taylor's conveyance, above-discussed, on termination of the original lease, Taylor executed an oil and gas mining lease and under the terms of his conveyance to P. G. Malone, it is indisputable that Malone and his assigns are entitled to receive ½ of the royalty paid under such lease. Since P. G. Malone or his assigns own not only ½ of the minerals under the land but by Taylor's express written conveyance are entitled to "one-half (½) of the royalty" from any future oil lease on the land as executed by W. H.

Taylor, the simple issue is whether the ¾₆ royalty payable upon production under the lease executed by Taylor is royalty.

The oil lease in issue reveals that W. H. Taylor placed in Paragraph Three of such oil and gas lease to J. M. Hawley et al. a provision for the payment of ⅛ royalty. He placed a further provision in Paragraph Eleven of the same lease that he was to receive one-sixteenth bonus royalty. By thus dividing the ¾₆ royalty payable under the lease, Taylor sought to limit Malone and his assignees to an undivided ½ of the royalty of ⅛ while he, Taylor, received not only ½ of the ⅛ royalty but, in addition, received all of the ¹⁄₁₆ royalty. The entire ¾₆ royalty was payable from production under the lease during its term.

An examination of Paragraph Eleven, the paragraph in which Taylor attempts to divide off ¹⁄₁₆ of the royalty to himself, defines the consideration payable under such paragraph as royalty but merely appends to the same the word "bonus". However, in the same Paragraph Eleven, as to payment of this ¹⁄₁₆ "bonus royalty", Taylor provided "delivery thereof to be made in the same manner as *other* royalty oil."

It is not a sound principle of law that a grantor may make a written conveyance in fee of ½ of the minerals under a tract of land with a further specific provision in the conveyance that the grantee and his assigns shall receive and be entitled to ½ of the royalty on any future leases and may thereafter execute such future lease, and by merely dividing the royalty payable in said lease and using the term "bonus royalty", set apart to himself more than ½ of the royalty payable under the lease.

The alleged ¹⁄₁₆ "bonus royalty" is defined in Paragraph Eleven of the lease as royalty and is payable out of all oil production under the lease "in the same manner as other royalty oil". This ¹⁄₁₆ is royalty and Malone or his assigns are entitled to ½ thereof. Therefore, judgment should be rendered in this Court that the ¾₆ royalty payable under Paragraphs Three and Eleven of the lease in issue is royalty and the same should be adjudged to the re-

spective owners according to their interests. Patterson v. Texas Co., 5 Cir., 131 F.2d 998; State Nat. Bank of Corpus Christi v. Morgan, 135 Tex. 509, 143 S.W.2d 757 Syl. 5; Sharp v. Fowler, 151 Tex. 490, 252 S.W.2d 153–154; Schlittler v. Smith, 128 Tex. 628, 101 S.W.2d 543; Vol. 31–A Tex. Jur., Section 476, pages 818–819; Davis v. Davis, 141 Tex. 613, 175 S.W.2d 226.