# JUNE, 1956

L. H. GRIFFITH ET AL v. W. H. TAYLOR

No. A-5638. Decided June 20, 1956.
(291 S.W. 2d Series 673)

*Stone & Stone* and *Ben H. Stone, Jr.,* all of Amarillo; *Cochran, Dudley, Fowler, Rucks, Baker & Jopling, Embry, Crowe, Tolbert, Boxley & Johnson,* all of Oklahoma City, *Clifford Braly* and *Thomas C. Braly,* of Pampa, for L. H. Griffith and others, petitioners.

The Court of Civil Appeals erred in holding that the one-sixteenth perpetual interest in production created by the 1953 oil and gas lease was bonus belonging exclusively to W. H. Taylor, rather than royalty in which these petitioners are entitled to participate. State, National Bank v. Morgan, 134 Texas 574, 136 S.W. 2d 800; Sheppard v. Stanolind Oil & Gas Co., 125 S.W. 2d 643, error refused; Sharp v. Fowler, 151 Texas 490, 252 S.W. 2d 153.

*Sanders, Scott, Saunders & Smith* and *Howard F. Saunders,* al lof Amarillo, for Respondent L. H. Griffith and others.

In response to points of error presented by petitioners cited Langever v. Miller, 124 Texas 80, 76 S.W. 2d 1025; Neblett v. Armstrong, 26 S.W. 2d 166, Com. App.; Sheffield v. Hogg, 124 Texas 290, 80 S.W. 2d 741.

MR. JUSTICE CALVERT delivered the opinion of the Court.

As originally begun, this suit was by W. H. Taylor, as plaintiff, against some thirty-five defendants to determine and settle a number of title matters. As it reaches us the case involves only the question of whether the respondent is entitled to the whole of the returns from a reservation in a lease of 1/16th of the minerals produced from certain tracts out of the Backward Seven Branch, as he contends, or whether, as petitioners contend, the respondent is entitled to only ½ of the 1/16th and they the other ½ of the 1/16th. This question was decided in favor of the respondent by the trial court and that judgment was affirmed by the Court of Civil Appeals by a divided court. 284 S.W. 768.

The petitioner, Griffith, acquired by transfer whatever rights were held by one P. G. Malone under an instrument of conveyance executed by respondent Taylor and copied in full in the opinion of the Court of Civil Appeals. (284 S.W. 2d 769-771). We shall deal only with this interest as all others are similar and stand or fall on the same basis. Petitioner denominates the interest acquired under the instrument a "mineral interest," while respondent calls it a "non-participating royalty interest." In the view we take of the case this difference of opinion is unimportant.

The conveyance was executed in 1928, at a time when the land was under a mineral lease providing for the usual 1/8th royalty. It conveyed to Malone an undivided one-half (½) interest in and to all of the minerals under a certain tract of land, subject to the terms of the lease then in existence, including ½ of the 1/8th oil royalties and gas rentals due and to be due under the existing lease. The instrument then provided that if the existing lease should terminate, "then and in that event, the oil, gas and mineral privileges" under the land should "thereupon be owned jointly by the said W. H. Taylor and the said P. G. Malone, the said W. H. Taylor owning an undivided one-half (½) interest and the said P. G. Malone owning an undivided one-half (½) interest in all oil, gas and other minerals in and under and upon said land" subject to such exceptions, reservations, and conditions as were thereafter incorporated in the instrument and subject to such future oil and gas mining leases as were given on the land.

Subsequent provisions of the instrument reserved to the grantor exclusive future leasing privileges, "provided and conditioned that a royalty of not less than the equal one-eighth (1/8) part of the oil, and a royalty of not less than one-eighth (1/8th) of the market value of the gas and casinghead gas, or of one-eighth (1/8) of the net proceeds of the sale of such gas or casinghead gas is reserved to the lessor" in any lease, it being understood that the grantee, his heirs and assigns should "receive and be entitled to one-half (½) of the royalty upon the oil, gas and casinghead gas" paid under any future oil, gas and mining leases.

By other provisions the grantor excepted from the conveyance and reserved unto himself all delay rentals and bonus payments made under future leases. The bonus reservation was referred to several times in the instrument. Illustrative of these references and sufficient for our purpose is the following: "And

the grantor herein, the said W. H. Taylor, expressly excepts from this conveyance and reserves unto himself all bonus money or other consideration which may or shall be received by him as a bonus for such oil and gas mining lease or leases, * * *."

The existing leases terminated in due course and in 1953 Taylor executed a new lease on the premises. In paragraph 3 of the lease a conventional 1/8th royalty was reserved. Paragraph 11 of the lease reads as follows:

"11. In addition to the royalties provided in Paragraph 3, preceding, of this lease, Lessor reserves to himself, his heirs and assigns, as additional consideration and bonus royalty, an equal one-sixteenth (1/16) part of all oil which may be produced and saved by Lessee, its successors and assigns, under and by virtue of this lease, delivery thereof to be made in the same manner as other royalty oil; and, on gas, including casing-head gas or other gaseous substance, produced from said land and sold or used off the premises or in the manufacture of gasoline or other products therefrom, an equal one-sixteenth (1/16) of the market value at the well of the gas so sold or used, provided that on gas sold at the wells this additional or bonus royalty on gas shall be one-sixteenth (1/16) of the amount realized from such sale. The additional or bonus royalty reserved on other minerals shall be an equal one-sixteenth (1/16) part of the minerals produced and saved or an equal one-sixteenth (1/16) part of the value of each unit of such minerals sold."

It is this 1/16th "bonus royalty" which is the subject of this controversy, and we must determine whether the 1/16th is "bonus" or "royalty."

◼ Undoubtedly the parties to a mineral conveyance may, as between themselves, designate what returns under a lease are to be regarded as royalty and what are to be regarded as bonus. This right follows the right of contract. Thus it is in this case that the grantee in the mineral deed could have assured himself of the interest his assignee now asserts by providing in the instrument that all reservations of a part of the production under any future lease, coterminous with the lease, should be regarded as royalty. Just so, also, the grantor could have assured himself of the interest he now asserts by providing that all returns from production under any future lease, over and above the usual 1/8th royalty, should be regarded as bonus. The fact is, however, that neither provision is in the instrument

under consideration, and whether the extra 1/16th is to be held to be "bonus," all of which goes to the grantor, or "royalty," in which the grantee shares, must be determined from the instrument as it is written. We must seek the intention of the parties. The question, therefore, is this: did the parties to the conveyance intend that reservations in a lease of a part of the production during the life of the lease should be "bonus" or royalty?" In deciding this question the parties will be held to have intended that the words used in their contract should be given their usual and ordinary meaning as required by Article 10, Revised Civil Statutes of Texas, 1925, subject, of course, to the restriction that if the words, when used, had a definite and fixed legal meaning they will be given that meaning.

As authority for the proposition that a share of production throughout the life of a lease is, in law, "royalty," petitioner cites Sheppard v. Stanolind Oil & Gas Co., Tex. Civ. App., 125 S.W. 2d 643, writ of error refused; State National Bank of Corpus Christi v. Morgan, 135 Texas 509, 143 S.W. 2d 757; Morriss v. First National Bank, Tex. Civ. App., 249 S.W. 2d 269, writ refused, N.R.E.; Patterson v. Texas Company, 5th Circuit, 131 F. 2d 998, and 31-A Tex. Jur. 819, Oil and Gas, § 476. Respondent answers that whatever legal meaning the cited cases may give to the words "royalty" and "bonus" cannot be controlling in this case because none of the cases had been decided when the mineral conveyance was executd in 1928. Assuming the contention of respondent in this respect to be sound, we think, neverthless, that the legal meaning of the terms as declared in the cited cases may well reflect what was theretofore and was then regarded as their usual and ordinary meaning.

■ In its broadest sense "bonus" is any consideration given for a lease over and beyond the usual 1/8th royalty, whether the additional consideration be paid or payable and whether paid in cash or payable out of production. Sheppard v. Stanolind Oil & Gas Co., supra; State National Bank of Corpus Christi v. Morgan, supra. Webster's New International Dictionary and Black's Law Dictionary both define "bonus" as "something given in addition to what is ordinarily received by, or strictly due, the recipient." When used in this sense "bonus" would include a share of production reserved in a lease in excess of the usual 1/8th even if the excess share was to continue throughout the life of the lease.

In its broadest aspect "royalty" is "a share of the product

or profit reserved by the owner for permitting another to use the property." Webster's Dictionary; Hill v. Roberts. Tex. Civ. App., 284 S.W. 246, 249, no writ history; State National Bank of Corpus Christi v. Morgan, supra. In this broad sense a sum certain to be paid out of production, although "bonus" in that it is consideration in addition to the usual 1/8th royalty, would also be "royalty."

■ Thus it may be that the words "bonus" and "royalty" in their broadest concepts and meanings are conflicting and overlapping. On the other hand, when it is necessary that they be distinguished there is a narrower concept of the two terms as they are ordinarily and commonly used and understood in the oil and gas industry in which they do not conflict but are harmonious. In this narrower sense a reservation or a payment of a part or percentage of production under a lease which is to continue throughout the life of the lease is regarded as "royalty," and a sum certain to be paid in cash or out of production is regarded as "bonus."

In State National Bank of Corpus Christi v. Morgan, supra, this Court, after observing that an oil-payment type of bonus came within the broad definition of "royalty" continued: "We believe, however, that a definition more nearly fitting what is *ordinarily* meant by the unqualified term royalty when used in the oil and gas industry would include as a necessary element of such usual or ordinary royalty the continuance of the share of the product or profit throughout the term of the lease." 143 S.W. 2d 757-761. There are supporting authorities from other jurisdictions. In Geller v. Smith, 130 Cal. App. 485, 20 Pac. 2d 102, 104, we find this statement: "My opinion is that the term 'bonus' as applied to an oil lease has come to have a definite meaning, to wit: A sum of money paid by a lessee to the lessor in consideration for the execution of a lease, as distinguished from the return of royalty reserved by the lessor to be paid by the lessee through the term of the lease." In Texas Company v. Fontenot, 200 La. 753, 8 So. 2d 689 the Supreme Court of Louisiana said: "The words 'bonus,' 'rental,' and 'royalty' used in connection with oil and gas leases are to be construed in the *ordinary and popular sense,* 'bonus' meaning the cash consideration paid or agreed to be paid for the execution of the lease, 'rental' being the consideration for the privilege of delaying drilling operations, and 'royalty' being a share of the production or proceeds therefrom reserved to the owner for permitting another to use the property." See also Patterson v. Texas Company, 5th Circuit, 131 F. 2d 998, 1001 and

Carroll v. Bowen, 180 Okla. 215, 68 Pac. 2d 773, 775. The foregoing authorities establish, with little doubt, that a share of production reserved or to be paid during the life of a lease is commonly and ordinarily understood in the oil and gas industry to be royalty. By force of our statute, supra, it must be assumed that the word "royalty," as used in the mineral conveyance executed by respondent to P. G. Malone, was used in that sense. Having so used the term and having contracted that the said Malone and his assignees would be entitled to one half of all royalty reserved in future leases, the grantor could not, as lessor, enter into an agreement with a lessee which would change the meaning of the term royalty and thereby defeat the rights of his grantee and his grantee's assignees.

We hold that the 1/16th reserved in the lease as "bonus royalty" is "royalty" as that term was used in the conveyance to Malone and that the petitioner is entitled to receive one half thereof. Having held the 1/16th to be royalty it matters not that respondent reserved unto himself "other consideration" which might be received by him as a bonus as well as "all bonus money."

The judgments of the trial court and Court of Civil Appeals are reversed and the cause is remanded to the trial court with directions to enter judgment for the petitioners in keeping with this opinion.

Opinion delivered June 20, 1956.

Associate Justice Abner McCall not sitting.