Robert BADGER et al., Appellants,

v.

E. F. KING et al., Appellees.

No. 5337.

Court of Civil Appeals of Texas.

El Paso.

Dec. 16, 1959.

Rehearing Denied Feb. 24, 1960.

Perkins, Bezoni & Kirwan, Midland, for appellants.

J. K. Smith, K. M. Nolen, Fort Worth, Stubbeman, McRae, Sealy & Laughlin, W. B. Browder, Jr., Milton L. Bankston, Midland, Neill, Blanks, Lewis & Logan, San Angelo, Legg & Saxe, Midland, Gerald FitzGerald, Midland, Storey, Armstrong & Steger, Dallas, Jones & Bednar, Los Angeles, Cal., Gable, Gotwals & Hays, A. C. Saunders, Tulsa, Okl., Chappell & Maddux, Nowata, Okl., Derwood Knight, Albuquerque, N. M., for appellees.

FRASER, Justice.

Appellants here were plaintiffs below in an action described as a trespass to try title suit. They brought the suit against all other owners of mineral interests, including the appellees, seeking to recover ⅚ths of the mineral and royalty interest in certain property located in Andrews County, Texas. The case was tried to the court without a jury. The controversy was based on the construction of a deed, and the judgment of the court found and declared that, under said deed, there was conveyed to the grantees therein a ¹⁄₆₄th mineral interest in the oil and gas on and under said property, and a different and separate royalty interest described as being ¹⁄₆₄th of the ⅛th oil and gas royalty provided for and to be paid under an instrument known as the "Doran lease." From this judgment appellants bring this appeal.

Inasmuch as the entire lawsuit is based on the construction of the above-mentioned deed, the same is included herein for reference purposes:

"The State of Texas } Know all men
County of Tom Green. } by These Presents:

"That, We, E. F. King and wife, Rebecca King of the County of Tom Green, and State of Texas, have and by these presents do grant, bargain,

sell, and convey, set over, assign, and deliver unto Ralph Pembrook, G. K. Harrison, A. H. Anderson, W. A. Flowers, and Robert Badger, all of Reagan County, Texas, the following, to-wit:

"One sixty-fourth (1/64) interest in and to all of the oil and gas in and under and that may be produced from the following described lands situated in Andrews County, Texas, to-wit:

"Section 10, Block A–42, H. H. Harrington Survey, consisting of 640 acres.

"It is expressly understood by and between the parties that the vendors are the owners of a one-sixteenth (1/16th) of all the royalty, and that the grantees are purchasing a one sixty-fourth (1/64) of the royalty (that is one-fourth (1/4) of one sixteenth of the oil and gas produced in and from any or all wells or other operations situated on the specified tract of land described in this instrument, together with rights of ingress and egress at all times for the purpose of mining, drilling, and exploring said land for oil and gas and removing the same therefrom.

"The said above described lands being now under an oil and gas lease executed in favor of Thomas Doran, of Las Vegas, New Mexico. It is understood that this sale is made subject to the said lease and subject to a royalty deed of one-sixteenth (1/16) interest to said Thomas Doran, but covers and includes one-sixty-fourth (1/64) of all oil royalty and gas rental or royalty.

"It is understood and agreed that one-sixteenth (1/16) of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease are to be paid to the said grantees and in the event that the said above described lease for any reason becomes cancelled or forfeited, then and in that event the grantors, their heirs, administrators,

executors and assigns, may or may not as they see fit, lease said land for oil and gas mining purposes; but if the same be by the grantors so leased, then said oil and gas mining lease shall provide for the payment of a royalty of one-eighth (1/8) part of all oil produced and saved from the lands above described and delivered free of cost in the pipe line, and a royalty of one-eighth (1/8) of the value of natural gas produced from said premises when said gas is sold or used off the premises, or one-eighth (1/8) of the net proceeds of the sale of such gas and a royalty of one-eighth (1/8) of the net amount of gasoline manufactured from natural or casinghead gas, and lessees, Ralph Pembrook, G. K. Harrison, A. H. Anderson, W. A. Flowers and Robert Badger, their heirs or assigns, shall have in such lease if so made the precise royalty interest heretofore described, and shall be entitled to one-sixteenth (1/16) part of any lease money.

"Should the lessor make a subsequent lease, it shall not be necessary for the grantees herein, their heirs or assigns, to join in the making of such lease.

"This sale is made for and in consideration of the sum of Ten ($10.00) Dollars and other valuable considerations, receipt of which is hereby acknowledged.

"To have and to hold the above described property, together with all and singular the rights and appurtenances thereto in anywise belonging to the said Ralph Pembrook, G. K. Harrison, A. H. Anderson, W. A. Flowers, and Robert Badger, their heirs, executors, administrators, and assigns forever, and we do hereby bind ourselves, our heirs, executors, and administrators to warrant and forever defend all and singular the said property unto the said Ralph Pembrook, G. K. Harrison, A. H. Anderson, W. A. Flowers, and Rob-

ert Badger, their heirs, executors, administrators and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"Witness our hands this 18th day of March, A.D. 1927.

"E. F. King
"Rebecca King"

Appellants maintain that they are entitled to ¼th of ⅟₁₆th of *all* the oil and gas produced from the property. It will be noticed that in the first part of the deed, the grant of the mineral interest is clear and sets forth the grant of a ⅟₆₄th mineral interest. The difficulty arises in the ensuing paragraph where the deed states: "that the grantees are purchasing a one sixty-fourth (⅟₆₄) of the royalty (that is one-fourth (¼) of one-sixteenth of the oil and gas produced in and from any or all wells or other operations situated in the specified tract of land described in this instrument * * ." Appellees maintain that this deed conveys to appellants two separate estates, to-wit: A ⅟₆₄th mineral estate and ⅟₆₄th of the ⅛th royalty provided for in the Doran lease.

 It has often been held that an instrument of this nature may convey two separate and distinct estates in the land, and such an instrument may convey a royalty interest, or interest in the royalty, which is larger or smaller than the interest conveyed in the minerals in place. Richardson v. Hart, 143 Tex. 392, 185 S.W.2d 563.

 The term "Royalty" in the oil and gas industry is commonly and ordinarily understood to be that share or part of production reserved or to be paid during the life of a lease; courts will take judicial notice that the usual royalty in an oil and gas lease is one-eighth of the oil and gas produced. Griffith v. Taylor, 156 Tex. 1, 291 S.W.2d 673; MacDonald v. Sanders, Tex.Civ.App., 207 S.W.2d 155 (n. r. e.);

State Nat. Bank of Corpus Christi v. Morgan, 135 Tex. 509, 143 S.W.2d 757.

 We believe the decision of the trial court should be affirmed, as it seems to us that the instrument in question here clearly sells, or grants, a ⅟₆₄th of the royalty in addition to the ⅟₆₄th of the minerals already granted. To hold otherwise would be to hold that grantors were conveying more than they stated in the deed that they owned. For example, the deed recites, "it is expressly understood by and between the parties that the vendors are the owners of a one-sixteenth (⅟₁₆) of all the royalty, and that the grantees are purchasing a one sixty-fourth (⅟₆₄) of the royalty." The further statement, to-wit—"that is one-fourth (¼) of one-sixteenth of the oil and gas produced" etc.—if given the effect the appellants desire, would put the grantors in the position of conveying more royalty than they had just stated they owned. In other words, their statement is to the effect that they own ⅟₁₆th of all the royalty; royalty having been long described and defined by the courts as being ⅛th of the oil and gas produced. This means, then, that they owned ⅟₁₆th of ⅛th of the oil and gas produced; but appellants' contention is that they were conveying ¼th of ⅟₁₆th, or ⅟₆₄th of the *total production*.

All things considered, we believe the intent of the parties to this instrument was to convey two separate and distinct estates in land, the first estate being a permanent interest in the oil and gas in place (a mineral interest of ⅟₆₄th of the oil and gas in place). Such an interest, though made subject to the terms of an existing oil and gas lease, would subsist during and beyond the life of the existing lease and, without any stipulation as to royalties, would carry with it by operation of law the right to ⅟₆₄th of the royalties paid under any lease. The second estate is the royalty estate, which was fixed by the parties in the same amount as would have obtained by operation of law under the terms of the existing lease, which provided for a ⅛th royalty. It fol-

lowed that "one-sixty-fourth (1/64) of all oil royalty and gas rental or royalty" under the terms of the existing lease would be 1/512th of the total production. Richardson v. Hart, supra. This seems to be the only construction that gives clear and total effect to the instrument as a whole, and without doing violence to the language of the instrument itself. It is difficult to conceive of the grantors' intent being to convey a greater royalty interest than they stated they owned. Therefore, we believe the trial court was correct in holding as it did.

Appellants' points are therefore overruled, and the judgment of the trial court affirmed.