**ALAMO NATIONAL BANK OF SAN ANTONIO, Texas, et al., Appellants,**

v.

**Harry H. HURD et al., Appellees.**

**No. 15078.**

Court of Civil Appeals of Texas, San Antonio.

Sept. 13, 1972.

Rehearing Denied Oct. 11, 1972.

P. H. Swearingen, Jr., W. F. Nowlin, Matthews, Nowlin, Macfarlane & Barrett, Morrison, Dittmar, Dahlgren & Kaine, George J. Carson, San Antonio, for appellants.

Anderson, Brown, Orn, Pressler & Jones, Houston, for appellees.

KLINGEMAN, Justice.

A will construction case. This is an appeal from a summary judgment construing a portion of the will of Rodney DeLange, wherein he devised, " . . . all producing and nonproducing oil, gas and mineral royalties, mineral interests, both participating and nonparticipating, perpetual and term, owned by me at the time of my death, as distinguished from oil, gas and mineral leases and interests in such oil, gas and mineral leases, . . . " to Jennie Stassinos, as not including overriding royalties and the production payments owned by the testator at the time of his death. The question on this appeal is the correctness of that construction.

The will includes various bequests and devises, but the only portions herein under construction are parts VI and VII of said will. Part VI provides in part as follows: "I give and devise unto Jennie Stassinos of San Antonio, Texas all producing and nonproducing oil, gas and mineral royalties, mineral interests, both participating and nonparticipating, perpetual and term, owned by me at the time of my death, as distinguished from oil, gas and mineral leases and interests in such oil, gas and mineral leases, all of which are excepted from this special devise to Jennie Stassinos, . . . . " Here follows specific devises which are not here under construction. In part VII of such will, the testator devised and bequeathed all the rest, residue and remainder of his estate, after the payment of debts, taxes, special bequests, administrative expenses, and after special devises made by him in said will, to the Alamo National Bank of San Antonio, Texas, as trustee for the Franklin Hurd Trust, the Patricia Ramsey Cottrell Trust, the Harry Hurd Trust, and the Jennie Stassinos Trust, in four equal parts, with detailed and specific instructions and limitations as to the administration of said trusts, and the administration of said estate.

Appellants complain that the trial court erred in granting appellees' motion for summary judgment because: (a) the plain and unambiguous language of the will of Rodney DeLange evidences the clear intent of the testator that Jennie Stassinos shall receive under said will the overriding royalties and production payments; (b) as a matter of law the term "royalty" includes

overriding royalties and production payments; and (c) if the will of Rodney DeLange, deceased, is ambiguous, then there is a genuine issue as to material fact and therefore, the appellees are not entitled to summary judgment as a matter of law.

The sole issue here to be determined is whether the overriding royalties and production payments owned by the testator at the time of his death constitute a part of the oil, gas and mineral royalties and mineral interests specifically devised to Jennie Stassinos under part VI of the will of Rodney DeLange, or constitute a part of the rest, residue and remainder of said estate of Rodney DeLange, devised to the Alamo National Bank as trustee.

The cardinal rule to be followed in construing a will is to seek and enforce the intention of the testator; and if the intention of the testator be not clearly expressed by the particular language used, it may be found by looking to the provisions of the will as a whole, and to the circumstances surrounding its execution. Guilliams v. Koonsman, 154 Tex. 401, 279 S. W.2d 579 (1955). It is often said that the meaning of the will must be determined by the language used "within the four corners of the instrument." Republic National Bank of Dallas v. Fredericks, 155 Tex. 79, 283 S.W.2d 39 (1955). The Supreme Court in this case established and enumerated the well settled principles of law applicable to the construction of wills. The Court said that: (a) the dominant purpose in the construction of a will is to ascertain the intention of the testator in the disposition of his estate; (b) a will should be construed as to give effect to every part of it if the language is reasonably susceptible to that construction; (c) the testator will not be presumed to have done a useless thing; and (d) all words which the testator used in his will and which express his wish as to distribution of his estate upon his death should be interpreted in the sense in which they were used in order that the plan of distribution of his estate may be enforced.

The will must be considered as a whole. If possible, every provision of the will must be given effect and must be brought into harmony with the general purpose of the will. This rule is sometimes thought to lead to the corollary that, in the event of conflict, the general intent of the testator, shown by the will as a whole, shall prevail over a special intent shown by a particular clause. 10 Tex. Pract. (Bailey) Construction of Wills, § 562, p. 330 (1968).

In order to properly construe this will, a general discussion of some of the applicable terms are here set forth.

Webster's New International Dictionary defines "royalty" as a share of the product or profit reserved by the owner for permitting another to use the property. In its broadest aspect royalty is a share of profit reserved by the owner for permitting another the use of the property. Griffith v. Taylor, 156 Tex. 1, 291 S.W.2d 673 (1956). Royalty in the oil and gas industry is commonly understood to be that part or share of production reserved or to be paid during the life of the lease; and generally speaking, the royalty created, excepted, or reserved under the terms of an oil or gas lease, is the right to receive, either in kind or its equivalent in money, a stipulated fraction of the oil or gas produced and saved from property covered by the lease, free of all costs of development and production. Hardwicke, Problems Arising Out of Royalty Clauses in Oil and Gas Leases in Texas, 29 Tex.L.Rev. 790, 791 (1951); 43 Tex.Jur.2d Oil and Gas § 379, p. 16 (1963); Badger v. King, 331 S.W.2d 955 (Tex.Civ.App.—El Paso 1960, writ ref'd n. r. e.).

"Overriding royalties", "oil payments" and "production payments" are terms usually referring to an interest carved out of the lessee's or operator's interest, in addition to the lessor's royalty. An overriding royalty is an interest running throughout the term of the lease, while an oil payment or production payment is an interest

running only until it has yielded a specified sum of money. Such interests are generally free from the burden of any costs of development or operation. 43 Tex.Jur.2d, supra, § 383; Standard Oil Company of Texas v. Marshall, 265 F.2d 46 (5th Cir. 1959); MacDonald v. Follett, 142 Tex. 616, 180 S.W.2d 334 (1944).

■ The term "overriding royalty" as used in an oil and gas lease means a given percentage of the production carved from the working interest, but by agreement, not chargeable with any of the expenses of operation. MacDonald v. Follett, supra. An overriding royalty is nevertheless a royalty and differs from ordinary royalties only in that it constitutes something in addition thereto; and though an overriding royalty is carved out of the working interest of the lease, the owner of such overriding royalty stands in the same relation to the operator as regards the right to receive some fractional part of the oil and gas produced and saved, as does the owner of the royalty interest. 43 Tex.Jur.2d, § 383, supra. An overriding royalty is first and foremost a royalty interest. In other words, it is an interest in oil and gas produced at the surface, free of the expenses of production. 2 Williams, Oil & Gas Law § 418.1 (1959).

There are numerous Texas cases, including Supreme Court decisions, holding that an overriding royalty is royalty. The Supreme Court in Delta Drilling Co. v. Simmons, 161 Tex. 122, 338 S.W.2d 143, 147 (1960), had under consideration an oil lease which contained the usual one-eighth royalty reservation, and contained this additional reservation: " 'Lessor reserves * * * a one-sixteenth of seven-eighths ($\frac{1}{16}$ of $\frac{7}{8}$th) overriding royalty interest, free and clear of all cost of development, except taxes.' " The Court in discussing such interest, said:

"The interest thus reserved has the characteristics of a royalty interest: it is an expense-free obligation (except as to taxes), payable as a specified share of the gross production, and is to continue throughout the life of the lease. We believe, therefore, that under the facts and circumstances of this case, the interest reserved is an overriding royalty interest.

"Where it was determined that the instrument before the Court created an overriding royalty, this Court has held that the overriding royalty was a royalty interest. McMahon v. Christmann, 1957, 157 Tex. 403, 303 S.W.2d 341, 304 S.W. 2d 267. Delta is therefore entitled to a $\frac{1}{8}$th part of all the royalty provided in the instrument which leased its interest, that is $\frac{1}{8}$ of the $\frac{1}{8}$ royalty and $\frac{1}{8}$ of the $\frac{1}{16}$ of the $\frac{7}{8}$ overriding royalty. Richardson v. Hart, 1945, 143 Tex. 392, 185 S.W.2d 563." 338 S.W.2d at 147.

In McMahon v. Christmann, 157 Tex. 403, 303 S.W.2d 341, 344, 304 S.W.2d 267 (1957), the Court said: "The overriding royalty is, withal, 'royalty', State National Bank of Corpus Christi v. Morgan, 135 Tex. 509, 143 S.W.2d 757, and Griffith v. Taylor, [156] Tex. [1], 291 S.W.2d 673, . . . ." In Griffith v. Taylor, supra, the Court had before it an oil lease in which a conventional one-eighth royalty was reserved, but which lease had an additional reservation which provided that the lessor reserved as additional consideration and bonus royalty an equal one-sixteenth part of all oil and gas produced and saved. The Court discussed in some detail various oil and gas terms, including "royalty", "bonus", and "bonus royalty", and held that the additional one sixteenth reserved in the lease was royalty and in its opinion, said: "The foregoing authorities establish, with little doubt, that a share of production reserved or to be paid during the life of a lease is commonly and ordinarily understood in the oil and gas industry to be royalty." 291 S.W.2d at 676.

■ We hold as a matter of law that the overriding royalties owned by the testator, Rodney DeLange, at the time of his death constituted a part of the oil, gas and mineral royalties devised to Jennie Stassi-

nos under part VI of said will of Rodney DeLange.

A more difficult problem is presented with regard to the production payments[1] owned by the testator at the time of his death. An oil payment is a share of the oil produced from the described premises, free of costs of production, terminating when a given volume of production has been paid over, or when a specified sum from the sale of such oil has been realized. An oil payment has basically the same characteristics as an overriding royalty, except it is of limited duration. An oil payment differs from an overriding royalty in that its duration is limited to the time required for the stated number of units of production, or the sum specified in the instrument creating the oil payment, to be realized. In all other respects an oil payment and an overriding royalty have substantially identical characteristics. 2 Williams, Oil & Gas Law, § 422, supra; Standard Oil Company of Texas v. Marshall, supra; Sheppard v. Stanolind Oil & Gas Co., 125 S.W.2d 643 (Tex.Civ.App.—Austin 1939, writ ref'd).

A number of eminent authorities have expressed the opinion that there is no logical reason for treating the interests differently. A. W. Walker, Jr., in his article entitled Oil Payments, 20 Tex.L.Rev. 259, 269 (1942), states:

> "On principle there seems little justification for making any distinction between the nature of the property interest created by an oil payment and an overriding royalty, and there can be no doubt in Texas but that an overriding royalty, whether payable in money or by the delivery of oil, is an interest in land. The only difference is that the overriding royalty continues throughout the entire life of the lease whereas the oil payment terminates when the sum provided for has been realized by the payee. This difference does not appear to justify any distinction in the nature of the property interests created so long as they endure."

Lee Jones, Jr., in an article entitled Problems Presented by Joint Ownership of Oil, Gas and Other Minerals, 32 Tex.L.Rev. 697, 706, 707 (1954), says: "An overriding royalty differs from an oil payment only in that it is of unlimited duration, and most, if not all, that has been said about oil payments will apply with equal force to overriding royalty. Conversely most, if not all, to be said about overriding royalty will apply with equal force to oil payments, . . . . The obvious similarity between these two types of interests should result in the adoption of similar rules of law with respect to both within any particular jurisdiction."

Many cases contain similar expressions with regard to the nature of the interest created. See Standard Oil Co. of Texas v. Marshall, supra; Roberts v. Lone Star Producing Co., 369 S.W.2d 373 (Tex.Civ.App.—Eastland 1963, no writ); Sheppard v. Stanolind Oil & Gas Co., supra; Frost v. Standard Oil Co. of Kansas, 107 S.W.2d 1037 (Tex.Civ.App.—Galveston 1937, no writ).

However, a number of cases have recognized some distinction between oil payments and royalties. One of the earliest cases to make a distinction was State National Bank of Corpus Christi v. Morgan, 135 Tex. 509, 143 S.W.2d 757 (Tex.Com. App.1940, opinion adopted), which involved an oil and gas lease which contained a conventional royalty reservation of one eighth, but contained an additional provision providing that in addition to all other reserva-

---

1. The term "oil payment" will sometimes be used in this opinion instead of the term "production payment", but for the purposes of this opinion, they shall be considered one and the same. The term "production payment" includes interests in oil, gas, sulphur and other minerals, but the term "oil payment" is most commonly employed, even when minerals other than oil are included. 2 Williams, Oil & Gas Law, supra, § 422.

tions of royalty, the lessor reserved an undivided one eighth of seven eighths of all oil, gas and other minerals until the lessor shall have received, free of costs of production, the sum of $48,000. While recognizing that an oil payment would come within the broad term "royalty", the Court stated: "We believe, however, that a definition more nearly fitting what is ordinarily meant by the unqualified term royalty when used in the oil and gas industry would include as a necessary element of such usual or ordinary royalty the continuance of the share of the product or profit throughout the term of the lease." [2] 143 S.W.2d at 761. This same distinction was carried forward by the Supreme Court in Griffith v. Taylor, supra, where the Court said that in a broad sense a sum certain to be paid out of production, although "bonus" in that it is consideration in addition to the usual one-eighth royalty, would also be "royalty", but stated that in a narrower sense a reservation or a payment of a part or percentage of production under a lease which is to continue throughout the life of the lease is regarded as "royalty", and a sum certain to be paid in cash or out of production is regarded as "bonus".

 It should be remembered that this is a will construction case and our ultimate objective is to ascertain the intention of the testator. Such intention must be determined from the four corners of the will. The will evidences an intent of the testator to make a distinction between nonoperating and operating oil, gas and mineral interests, with the nonoperating interests such as royalties, overriding royalties, and oil payments passing under part VI of said will, and the operating interests such as oil, gas and mineral leases and working interests, passing under part VII of said will. The testator makes a similar distinction between mineral interests burdened with mangement, development, and operation charges, such as oil, gas and mineral leases and working interests in oil, gas and mineral leases, and those not so burdened, such as royalties, with the burdened interests passing under part VII of such will, and the nonburdened interests passing under part VI of said will.

It appears from the record that testator owned extensive oil, gas and mineral properties [3] and as an experienced oil, gas and mineral operator, would have more than an elementary knowledge of various types of oil, gas and mineral interests and their particular characteristics. It is to be noted that in part VII of testator's will, which is the property devised to the Alamo National Bank as trustee, various refer-

2. This case, like some others making a distinction between the terms "royalty" and "bonus", involved land which was subject to a reservation of a fractional interest in the oil royalty, gas royalty, and royalty in other minerals, but which reservation specifically provided that the holder of such reservation did not participate in any bonus or bonuses to be received for any oil, gas or mineral lease. In many of these cases, the term "royalty bonus" is used. *State National Bank* contains a good discussion of what is meant by the term "bonus" and quotes with approval a definition from Sheppard v. Stanolind Oil & Gas Co., supra, 125 S.W.2d at 647, wherein it is stated: "The term 'bonus' is applied to sums paid or contracted as an additional consideration for a lease over and above the usual royalty." The Court in *Sheppard* also said: "The expression 'royalty bonus' would be but a convenient term to represent the royalty consideration for the lease over and above that which is usual. The oil bonus, as we have seen, partakes in every particular of the nature of royalty and royalty bonus, except only that its amount is limited. It is analogous to an overriding royalty. And such it would in fact be if, instead of moving to the lessor, it moved to the lessee under an assignment of the lease." 125 S.W.2d at 648.

3. The values of the overriding royalties and production payments owned by the testator at the time of his death as declared in the Federal Estate Tax Return are shown in one of the answers to appellees' motion for summary judgment, and it would not appear to be a substantial part of testator's estate, with the value of the total overriding royalties shown to be $9,779, and the value of the total production payments shown to be $7,365.

ences are made to oil, gas and mineral leases and interests in oil, gas and mineral leases, describing them in some detail. In said part VII testator specifically provides that he wishes to release the trustee from the burden of operating certain producing oil, gas and mineral leases owned in part by him, and directs that the trustee proceed with the sale and disposition of such leases, specifically designating such leases. He further provides with regard to other producing oil and gas leases and lease interests in which he owns a portion of the working interests and which are either being operated by him or by one of the other working interest owners, that the operation be continued by the other working interest owner, and that if such other working interest owner fails or refuses to do so, then the trustee is directed to proceed with the sale of the working ownership interests in such lease. He also gives specific directions as to what should be done as to any and all nonproducing oil, gas and mineral leases in which he is either the sole owner or a partial owner.

When we consider the language of the will as a whole and give full regard to all the provisions therein, we are convinced that the testator did not intend to make any distinction between royalties, overriding royalties and production payments, all of which are nonoperating interests, and which have basically the same characteristics, but intended that they be treated alike.

It is our opinion that the overriding royalties and production payments owned by Rodney DeLange at the time of his death were a part of the oil, gas and mineral royalties and mineral interests devised to Jennie Stassinos under part VI of testator's will, and did not constitute property devised to the Alamo National Bank as trustee for the Franklin Hurd Trust, the Harry Hurd Trust, the Patricia Ramsey Conttrell Trust, and the Jennie Stassinos Trust, under part VII of said will; and we hold that the overriding royalties and production payments owned by the testator, Rodney DeLange, at the time of his death

constitute property devised to Jennie Stassinos under part VI of said will, and that all of such overriding royalties and production payments passed to and vested in Jennie Stassinos under part VI of said will of Rodney DeLange.

 No motions for summary judgment were filed by appellants, and under the circumstances, we do not have the power to reverse and render the judgment of the trial court. The only thing before us is whether the summary judgment was improvidently granted. Cowan v. Woodrum, 472 S.W.2d 749 (Tex.1971); Hinojosa v. Edgerton, 447 S.W.2d 670 (Tex. 1969). We hold that appellees' motion for summary judgment was improvidently granted, and the judgment of the trial court is reversed and remanded.