**In re JINDAL SAW LIMITED, Jindal Enterprises LLC, and Saw Pipes USA, Inc., Relators.**

No. 01–07–01068–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 22, 2008.

Rehearing Overruled June 24, 2008.

Jeffrey Christopher Wright, Levi G. McCathern II, McCathern Mooty, L.L.P., Dallas, TX, for Relator.

Kurt B. Arnold, Micajah Daniel Boatright, Arnold & Itkin, LLP, Marvin B.

Peterson, Law Office of Marvin B. Peterson, Houston, appellee.

Panel consists of Justices TAFT, KEYES, and ALCALA.

## OPINION

ELSA ALCALA, Justice.

By petition for writ of mandamus, relators, Jindal Saw Limited, Jindal Enterprises LLC, and Saw Pipes USA, Inc. (collectively, "Saw Pipes"), challenge the trial court's October 11, 2007 order denying Saw Pipes' motion to compel arbitration.[1] In two issues, Saw Pipes contends that the trial court abused its discretion by denying its motion to compel arbitration of the survival action and wrongful-death claims because an enforceable arbitration agreement exists and the claims fall within the scope of the arbitration agreement. We conclude that the non-signatories to the arbitration agreement are bound to arbitrate the survival action claims because the signatory agreed to arbitrate his claims against Saw Pipes. We also conclude, however, that the non-signatories' wrongful-death claims are not bound by the arbitration agreement because those claims are personal to the non-signatories and they did not agree to arbitrate the claims. We grant the petition for writ of mandamus for the survival action and deny the petition for writ of mandamus for the wrongful-death claims.

### Background

Saw Pipes USA, Inc., a steel company in Baytown, Texas, offered a benefit plan under the federal Employee Retirement Income Security Act ("ERISA") to provide medical and short-term wage replacement benefits to participants who incurred occupational injury. The benefit plan was provided instead of workers compensation insurance coverage. Saw Pipes' employee, Carlos Lara, agreed to the benefit plan, which included an arbitration agreement. The agreement, signed by Carlos, stated,

### SAW PIPES USA, INC.

### *EMPLOYEE SAFETY PROGRAM BENEFIT PLAN*

Saw Pipes USA, Inc. has established, effective May 18, 2006, this plan which provides benefits for Participants who sustain certain accidental on-the-job injuries. Such plan is in compliance with state and federal law, and in accordance with the following terms and conditions:

### *SECTION ONE*

### *PURPOSE OF THE PLAN*

. . . .

1.2 *Purpose.* The purpose of the Plan is to provide (i) certain medical benefits for Participants who sustain an occupational Injury; and (ii) certain short-term wage replacement benefits to Participants who sustain an occupational Injury.

. . . .

### *SECTION FOUR*

### *BENEFITS*

. . . .

4.2 *Medical Benefits.* Medical benefits under this Plan attributable to a Participant's Injury will be one hundred percent. . . .

4.6 *Death Benefits.* *In the case of a Participant's death as a direct result of*

---

1. The underlying case is *Yvonne Lara, Individually, as Personal Representative of the Estate of Carlos L. Lara, Deceased, and as Next Friend for Tina Lara and Joe Lara,* cause number 370130–401, in Probate Court Number One of Harris County, Texas, the Hon. Russell Austin presiding.

*an Injury, there are no guaranteed benefits; however, a settlement offer may be made to the Participant's beneficiaries.*

. . . .

(Emphasis added).

Attached to the benefit plan was an arbitration agreement that stated,

### SAW PIPES USA, INC.

### ARBITRATION AGREEMENT

### EXHIBIT A

A. It is agreed that any and all disputes, claims, (whether tort, contract, statutory or otherwise) and/or controversies which relate, in any manner, to this Agreement, the Plan, or to Employee's employment with Employer shall be submitted to final and binding arbitration. The claims covered by this agreement to arbitrate include, but are not limited to, those which relate to the following:

1. The formation, application, and interpretation of the Agreement.

2. *The release, and waiver, provisions contained herein, whether initiated by the Employee, or anyone claiming by, through or under the Employee.*

3. Eligibility for benefits and coverage under the Plan.

. . . .

9 . . . . *c) Personal injury cases for negligence . . . .*

B. This arbitration provision is expressly made pursuant to and shall be governed by Federal Arbitration Act. . . .

F. *This Agreement to arbitrate shall survive the termination of employee's employment.* It may only be revoked or modified by a writing signed by the parties which specifically states an intent to revoke or modify this Agreement.

. . . .

### ACKNOWLEDGMENT

. . . .

It is therefore agreed that both Saw Pipes USA, Inc. and the undersigned employee will follow the process outlined under the Plan, in resolving any and all employment related disputes and thus adopt Saw Pipes USA, Inc. Alternative Dispute Resolution Plan and all internal procedures as the exclusive means of resolving workplace disputes.

(Emphasis added). Carlos signed his name below the acknowledgment.

A document entitled, "Saw Pipes USA, Inc. Alternative Dispute Resolution Plan" was attached to the agreement. Section 1.2(A) of the Alternative Dispute Resolution plan, which was entitled "Application and Coverage," stated,

Until revoked by Saw Pipes USA, Inc. pursuant to this Plan, *this Plan applies to and binds the Company,* each employee who is in the employment of the Company on or after the effective date of this Plan, *and the heirs, beneficiaries and assigns of such person. All such persons shall be deemed parties to this Plan.*

(Emphasis added).

While at work for Saw Pipes, Carlos was injured, resulting in his death, following several weeks of hospitalization. According to Saw Pipes, Carlos "or his representative, received and accepted medical and wage replacement benefits under the Benefit Plan for his occupational injury."

Carlos's wife, Yvonne Lara, acting individually, as the representative of the estate of Carlos, and as next friend on behalf of her two children, sued Saw Pipes for negligence and gross negligence. Yvonne asserted that Saw Pipes negligently failed to train its employees; negligently hired its employees; failed to supervise its employees; failed to control its crane; failed to

provide a safe workplace; failed to provide adequate workplace communication; failed to operate the crane safely; and failed to warn Carlos of the dangerous condition. According to the petition, negligence caused the death of Carlos when the employees of Saw Pipes dropped a series of pipes on him.

In its answer generally denying the claims, Saw Pipes asserted a plea in abatement, requesting that the claims be sent to arbitration. Saw Pipes also filed a motion to compel arbitration. Saw Pipes contended that Carlos was bound by his agreement to arbitrate claims and that the "derivative nature" of the claims for the survival action and wrongful-death claims bound Yvonne and the children to Carlos's arbitration agreement. Yvonne responded that neither she nor her children should be bound to the arbitration because they did not sign the agreement with Saw Pipes.

The court refused to compel arbitration. Saw Pipes seeks mandamus relief to direct the trial court to (1) vacate its orders denying the plea in abatement and motion to compel arbitration, (2) compel arbitration of the claims, and (3) stay all trial court proceedings pending completion of arbitration.

### Laches

■ As a preliminary matter, we address the assertion by Yvonne and her children that Saw Pipes' petition is barred under the principle of laches due to the ten-week delay in pursuing this petition for mandamus filed by Saw Pipes.

■ Although mandamus is a legal remedy, it is largely controlled by equitable principles, including the concept that equity aids the diligent and not those who slumber on their rights. *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993). "Two essential elements of laches are (1) unreasonable delay by one having

legal or equitable rights in asserting them; and (2) a good faith change of position by another to his detriment because of the delay." *Rogers v. Ricane Enters.*, 772 S.W.2d 76, 80 (Tex.1989). A delay of only a few months can constitute laches. *See Rivera*, 858 S.W.2d at 366 (four months); *Furr's Supermarkets, Inc. v. Mulanax*, 897 S.W.2d 442, 443 (Tex.App.-El Paso 1995, no writ) (four months); *In re Harbrook Tool & Mfg. Co.*, 181 S.W.3d 551, 551 (Tex.App.-El Paso 2005, orig. proceeding) (nine months). A showing of harm from the delay in filing a petition can include preparing the case for trial and reliance on discovery, such as reliance on deemed admissions. *In re East Texas Salt Water Disposal Co.*, 72 S.W.3d 445, 449 (Tex. App.-Tyler 2002, orig. proceeding) (ten-year delay constituted laches).

Yvonne and her children believe that they were harmed by the ten-week delay through their expenditure of "considerable time, effort, and resources attempting to procure discovery" from Saw Pipes. Yvonne and her children contend that they (1) prepared deposition notices, (2) sent "incessant e-mail requests," (3) requested deposition dates, (4) were told by Saw Pipes that Saw Pipes was sending some of the documents and (5) prepared and filed a motion to compel discovery when Saw Pipes failed to comply with the requests for discovery.

In response, Saw Pipes explains that the ten-week gap between the ruling by the trial court and the filing of the petition was due to (1) the intervening Thanksgiving holiday, (2) the need to obtain the certified transcript of the hearing held by the trial court and certified copies of the pleadings in the trial court, and (3) the time required to thoroughly analyze and consider the issues presented in the petition. Saw Pipes also contends that there is no evidence of undue prejudice from the delay.

Further, Saw Pipes points out that, in its discovery responses, it asserted "that any discovery disputes must be resolved in the arbitration forum."

■ As support for their position, Yvonne and her children point to *Mulanax.* 897 S.W.2d at 443 (holding sixteen-week delay in filing petition for mandamus constituted laches because no justification offered for delay in challenging order to produce documents). Here, the ten-week delay is shorter than the sixteen-week delay in *Mulanax. See id.* Also, no one claims that any depositions had taken place or that documents had been tendered during discovery. At most, the record shows that discovery requests were made and that efforts were made to obtain the discovery. We conclude that the petition is not barred under the principle of laches because the delay was a short period of time, Saw Pipes provided reasonable reasons for the delay, and there was no harm from the delay. *See Rogers,* 772 S.W.2d at 80.[2]

## Mandamus

Having determined that the petition is not barred under laches, we next consider whether the trial court erred by refusing to compel arbitration. We must determine whether the survival claims and wrongful-death actions filed by Yvonne and her children, who were non-signatories to the arbitration agreement, are subject to the arbitration agreement between the signatory and Saw Pipes.

### A. Standard of Review for Refusal to Compel Arbitration

■ It is undisputed that the agreement signed by Carlos specifically states it is governed by the Federal Arbitration Act ("FAA"). A party seeking relief from the denial of arbitration sought under the FAA has no adequate remedy by appeal and is entitled to mandamus relief to correct a clear abuse of discretion by the trial court. *In re L & L Kempwood Assocs., L.P.,* 9 S.W.3d 125, 128 (Tex.1999) (per curiam). If an agreement to arbitrate exists encompassing the claims in question, and the party opposing arbitration has failed to prove its defenses, then a trial court has no discretion; its only option is to compel arbitration. *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 753–54 (Tex.2001). In the context of enforcement of an arbitration agreement, defenses refer to unconscionability, duress, fraudulent inducement, and revocation. *Id.* at 756. "Whether an enforceable agreement to arbitrate exists is a legal question entitled to *de novo* review." *In re Kepka,* 178 S.W.3d 279, 286 (Tex. App.-Houston [1st Dist.] 2005, orig. proceeding); *Mohamed v. Auto Nation USA Corp.,* 89 S.W.3d 830, 835 (Tex.App.-Houston [1st Dist.] 2002, no pet).

Here, the parties agree that Carlos bound himself to arbitrate his workplace disputes with Saw Pipes. The parties also agree that Yvonne and her children are not signatories to that agreement, and that the agreement did not provide for death benefits. The dispute here narrowly concerns whether Carlos's agreement to arbitrate employment disputes with Saw Pipes binds Yvonne and her children to that agreement because the claims of Yvonne and her children concern Carlos's employment with Saw Pipes, and Carlos's agreement provides that it applies to his heirs, beneficiaries and assigns.

---

**2.** We note that "[w]aiver may be found when it is shown that a party acted inconsistently with its right to arbitrate and such actions prejudiced the other party." *In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d 571, 574 (Tex.1999). Yvonne and her children do not assert waiver on those grounds. Also, the record demonstrates that Saw Pipes consistently pursued its request to arbitrate the claims and that it did not act inconsistently with its right to arbitrate.

"Under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex.2005). "Because arbitration is contractual in nature, the FAA generally 'does not require parties to arbitrate when they have not agreed to do so.'" *Id.* "Federal and Texas state courts have recognized, however, that '[i]t does not follow ... that under the [FAA] an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision'; instead, under certain circumstances, principles of contract law and agency may bind a non-signatory to an arbitration agreement." *Id.* "Federal courts have recognized six theories, arising out of common principles of contract and agency law, that may bind non-signatories to arbitration agreements: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6) third-party beneficiary." *Id.* at 739; *see FirstMerit Bank, N.A.*, 52 S.W.3d at 755–56 (holding non-signatory is subject to contract's arbitration provision when non-signatory sues based on contract to which arbitration provision is part).

The law favoring arbitration does not go so far as to create an obligation to arbitrate where none exists. *See Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989) (arbitration "is a matter of consent, not coercion"); *Kellogg Brown & Root*, 166 S.W.3d at 738 (FAA "does not require parties to arbitrate when they have not agreed to do so") (quoting *Volt*, 489 U.S. at 478, 109 S.Ct. at 1255). Although there exists a strong presumption favoring arbitration, "the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists." *Kepka*, 178 S.W.3d at 286; *Mohamed*, 89 S.W.3d at 835; *see also Fleetwood Enters., Inc. v.*

*Gaskamp*, 280 F.3d 1069, 1073 n. 5 (5th Cir.2002) ("[F]ederal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties ...."; further, "[T]he federal policy favoring arbitration does not extend to a determination of who is bound....").

**B. Wrongful Death**

Saw Pipes contends that Yvonne and her children are bound to arbitrate their wrongful-death claims even though they did not sign the arbitration agreement because they "stand in the shoes" of the decedent, Carlos, and are subject to the same defenses to which Carlos would be subject. Saw Pipes asserts, "Although there is no Texas precedent that has determined whether the pre-death arbitration agreement between an employee and his nonsubscribing employer binds the employee's statutory wrongful death beneficiaries, the century-old general rule remains, that a decedent's pre-death contracts bind his wrongful death beneficiaries." Saw Pipes explains its position as follows:

> Once Mr. Lara bound himself to arbitrate his claims against Relators, he statutorily bound his wrongful death beneficiaries to this same agreement. If Mr. Lara had lived, then he would not have had the defense that he did not sign the agreement, and therefore, his statutory beneficiaries do not have that defense. Likewise, because Mr. Lara signed the arbitration agreement in question, Relators can assert the defense of arbitration against the Real Parties in Interest.

We conclude that although Carlos agreed to arbitrate his employment disputes between him and Saw Pipes, Yvonne and her children are not bound to the arbitration agreement because they did not agree to

arbitrate their personal wrongful-death claims.

The Wrongful Death Act is codified in the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 71.001–.012 (Vernon Supp.2007). Under the Wrongful Death Act, a decedent's beneficiaries may bring an action if the individual injured would have been entitled to bring an action for the injury had the decedent lived. *Id.* § 71.003(a). To advance a wrongful-death claim, a plaintiff must be a child, parent, or the spouse of the decedent. *Id.* § 71.004. The defendant's wrongful act must have caused the death of the decedent. *Id.* § 71.002. Finally, the decedent must have been entitled to bring an action for the injury had he lived. *Id.* § 71.003.

■ In a wrongful-death action, a non-signatory is not bound to an agreement to arbitrate claims entered into by the deceased. *See Kepka,* 178 S.W.3d at 294 ("Because [Marguerite] Kepka did not sign the arbitration agreement in her individual capacity, and because her wrongful-death claim [for negligence and gross negligence arising out of William's care at the nursing home] was necessarily brought in her individual capacity for damages personal to her, we hold that the trial court abused its discretion in ordering her individual wrongful-death claim to arbitration."). In *Kepka,* Marguerite signed the arbitration agreement on behalf of William as his legal representative, but she did not sign on her own behalf. *Id.* We held that Marguerite's wrongful-death negligence claim, which alleged that she, personally, had been damaged, was not bound to the arbitration agreement because she signed that agreement as the legal representative of William, not individually. *Id.* We said, "Wrongful-death claims are personal to the statutory beneficiaries who assert the claims, and recovery for those claims does not benefit the estate." *Id.* We explained

why language in the agreement that claimed heirs were bound to the agreement did not apply to Marguerite in her wrongful-death claims. *Id.* at 295–96. We stated,

> A non-signatory wife, asserting in her individual capacity personal statutory claims for damages such as her own mental anguish and loss of consortium, earnings, companionship, society, and inheritance, lacks the type of privity contemplated for the contracting parties to bind her to a contract that she did not sign in her individual capacity. Simply put, a surviving wife may be an heir, within the meaning of an arbitration agreement that she did not sign individually, to her late husband's claims; she cannot be an heir to her own claims.

*Id.* at 296.

Saw Pipes contends that *Kepka* is distinguishable from the circumstances presented here, because the "arbitration agreement was not within the employment context, and the intent that Ms. Kepka had when making her signature was different than the intent of the late Carlos Lara." *See id.* Neither of these assertions is persuasive. Saw Pipes does not explain why we should treat an arbitration agreement in an employment context differently from other arbitration agreements, nor does it explain how Carlos's intent differed from Marguerite's intent. In both situations, the non-signatory to the arbitration agreement is seeking personal claims for wrongful death. We see no reason to treat these situations differently.

Saw Pipes also contends that *Kepka* "did not address" the requirement of *Russell v. Ingersoll–Rand* that wrongful-death plaintiffs stand in the legal shoes of the decedent and "the long-standing rule regarding the binding effect of pre-death contracts." *See Russell v. Ingersoll–Rand Co.,* 841 S.W.2d 343, 345 (Tex.1992); *Kepka,* 178

S.W.3d at 295–96. In *Russell,* the Texas Supreme Court stated, "[T]he right of statutory beneficiaries to maintain a wrongful-death action is entirely derivative of the decedent's right to have sued for his own injuries prior to his death," and the statutory beneficiaries "stand in the legal shoes of the decedent." *Russell,* 841 S.W.2d at 347. Wrongful-death actions are subject to the same defenses to which the decedent's action would have been subject. *Id.* (holding statute of limitations is proper defense to wrongful-death actions if defendant could have raised statute of limitations against decedent); *see also Thompson v. Ft. Worth & R.G. Ry. Co.,* 97 Tex. 590, 80 S.W. 990, 991 (1904); *Winkler v. Kirkwood Atrium Office Park,* 816 S.W.2d 111, 115 (Tex.App.-Houston [14th Dist.] 1991, writ denied) (holding membership agreement release signed by member releasing club from injuries suffered while participating in fitness center programs released all claims against all individuals and entities, including wrongful-death claims filed by non-signatory wife and children of decedent).

In *Kepka,* we recognized the principle that heirs, such as surviving spouses or children, "stand in the shoes" of the signatory who has agreed to arbitrate claims. *See Kepka,* 178 S.W.3d at 295–96. We stated,

> An arbitration agreement may recognize that certain non-parties who have the appropriate sort of privity with one of the signatories—those such as assignees, agents, subrogated insurers, representatives, trustees, third-party beneficiaries, etc.—are bound by the agreement because those types of non-parties *"stand in the shoes"* of one of the signatories, are authorized to make decisions on a signatory's behalf or for its benefit, were intended to benefit from the signatories' contract, or the like.... Some individuals who qualify as heirs might also fall within this type

of privity: for example, children or a surviving spouse who assert claims as the estate's representative on the estate's behalf. However, under basic contract principles, parties to an arbitration agreement generally have no authority to bind by their contract anyone who does not have the requisite privity with at least one of them or with the contract itself to arbitrate anything....

*Id.* (Emphasis added). Thus, in *Kepka,* we recognized the legal concept that a wrongful-death plaintiff stands in the legal shoes of the decedent. *See id.* But because wrongful-death claims are personal to the statutory beneficiaries who assert the claims and recovery for those claims does not benefit the estate, we held that a wrongful-death plaintiff was not bound to the arbitration clause to which she did not agree. *Id.*

■ Nothing in our decision today, or in *Kepka,* violates the binding effect of pre-death contracts. In *Kepka,* as now, we agree that a wrongful-death action is subject to the same defenses as those to which the decedent's action would be subject. *See id.* In deciding the ultimate issues in the dispute, the trier of fact would be bound by the same defenses to which the decedent's action would be subject. *See Russell,* 841 S.W.2d at 347. Those defenses that go to the merits of the lawsuit would be determined by the arbitrator, after the court determined the gateway issue of whether the case should be arbitrated. *See W. Dow Hamm III Corp. v. Millennium Income Fund, L.L.C.,* 237 S.W.3d 745, 755 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (holding except for limited exception, "res judicata is for the arbitrator" because defense on merits of lawsuit is matter for arbitrator to determine); *In re Igloo Prods. Corp.,* 238 S.W.3d 574, 579–80 (Tex.App.-Houston [14th] 2007, orig. proceeding) ("[M]atters

of 'procedural arbitrability,' such as allegations of waiver, delay, or a similar defense to arbitrability, are presumptively for the arbitrator to decide.").

The issue here concerns the gateway question whether there is an agreement to arbitrate between Saw Pipes and Yvonne and her children. *See Kepka,* 178 S.W.3d at 295–96. Unlike the defenses described in *Russell* that apply to the agreement as a whole, the only defenses pertinent to the gateway question of whether parties are bound to the agreement's clause to arbitrate are those contractual defenses of unconscionability, duress, fraudulent inducement, and revocation. *See FirstMerit Bank,* 52 S.W.3d at 756.

Yvonne and her children are non-signatories to the agreement signed by Carlos and are asserting the wrongful-death claims in their individual capacities for non-contractual personal causes of action. We conclude that there is no agreement to arbitrate the wrongful-death claims asserted by Yvonne and her children and that the wrongful-death claims should not be compelled to arbitration. *See Kepka,* 178 S.W.3d at 295–96; *see Gaskamp,* 280 F.3d at 1077 (holding children not bound to arbitration agreement signed by parents because they are not third party beneficiaries and are suing for tort claims and not on basis of contract); *Merrill Lynch, Pierce, Fenner, and Smith, Inc. v. Longoria,* 783 S.W.2d 229, 231 (Tex.App.-Corpus Christi 1989, no writ) (holding wife not required to arbitrate claim for loss of consortium even though it was derivative of wrongful termination claim of her husband, who was subject to arbitration under employment contract). We hold that the trial court did not abuse its discretion by denying the motion to compel arbitration of the wrongful-death claims.

## C. The Survival Action

■ Saw Pipes contends that the negligence claim asserted by Yvonne as the personal representative of the estate of Carlos is a survival action that must be arbitrated. Saw Pipes asserts that Carlos's agreement with it bound him to arbitrate his personal injury claims against it, and therefore the claims and causes of action asserted by the personal representative and heirs of the estate of Carlos in the survival action must be compelled to arbitration. Yvonne's lawsuit as the personal representative of the estate of Carlos is a claim under the Texas Survival Statute. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 71.021 (Vernon Supp.2007).

The Survival Statute states,

(a) A cause of action for personal injury to the health, reputation, or person of an injured person does not abate because of the death of the injured person or because of the death of a person liable for the injury.

(b) A personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person. The action survives against the liable person and the person's legal representatives.

(c) The suit may be instituted and prosecuted as if the liable person were alive.

*Id.*

■ Survival claims are "wholly derivative" of a decedent's rights. *Russell,* 841 S.W.2d at 345. A survival action does not create a new cause of action, and merely permits the injured decedent's cause of action to survive his death. *Kramer v. Lewisville Mem'l Hosp.,* 858 S.W.2d 397, 404 (Tex.1993). In most survival actions, the plaintiff must be the personal representative of the estate. *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.,* 192 S.W.3d 780, 786 (Tex.2006). The survival action is for an actionable wrong that the decedent suffered before his death for which he would have been able to bring

an action had he lived. *See Russell*, 841 S.W.2d at 345. Recoverable damages are those that the decedent received while alive. *Id.* Any defense that would have been available against the decedent is available against the plaintiffs in the survival action. *Id.*

The plain language of the arbitration agreement between Carlos and Saw Pipes references people who make claims by, through or under Carlos. The arbitration agreement provides that the claims covered by this agreement to arbitrate include "[t]he release, and waiver, provisions contained herein, whether initiated by the Employee, or anyone claiming by, through or under the Employee." The intent, as described in the agreement, was to bind anyone making a claim on behalf of Carlos.

The Alternative Dispute Resolution plan also referred to its applicability to people making claims on behalf of Carlos. The Alternative Dispute Resolution plan said, "this Plan applies to and binds the Company, each employee who is in the employment of the Company ... and the heirs, beneficiaries and assigns of such person." The agreement plainly states that by his signature, Carlos was bound to the agreement and his intent was to bind his "heirs, beneficiaries and assigns." The terms in the agreements signed by Carlos are similar to the terms used in the survival statute. The survival statute provides that a "personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person." TEX. CIV. PRAC. & REM.CODE ANN. § 71.021(b). In the agreements he signed, Carlos agreed to bind himself, as well as any claims asserted on his behalf by his heirs, legal representatives, and estate in the survival action. Carlos, therefore, bound his personal representative and heirs to arbitrate the claims pursued under the survival statute.

In *Kepka*, we explained why the use of the term "heir" in the survival statute made the survival statute different from the Wrongful Death Act. *See Kepka*, 178 S.W.3d at 295–96. We said, "[O]ur wrongful-death statute (which grants a personal right to the spouse, children, and parents) does not use the term 'heir' at all, while the survival statute (which establishes claims that are clearly derivative of the decedent's rights) provides that '[a] personal injury action survives to and in favor of the *heirs, legal representatives, and estate of the injured person.*'" *Id.* at 296 (emphasis added); *compare* TEX. CIV. PRAC. & REM.CODE ANN. § 71.004(a)-(b) (wrongful-death statute) *with id.* § 71.021(b) (survival statute). We further explained the rationale for treating survival actions and wrongful-death claims differently in *Kepka*. *See Kepka*, 178 S.W.3d at 296. We determined that it is "reasonable to conclude that, when the contracting parties included 'heirs' in this list, they meant only to the extent that those heirs were functioning in the same capacity as the others listed, *i.e.*, not when the heirs were suing on their own behalf for their own personal loss." *Id.* Thus, Carlos had the power to bind his heirs in the survival action filed on his behalf but could not bind the personal wrongful-death claims.

Here, as in *Kepka*, the agreement states that the heirs are bound to it. *Id.* at 284. Although Yvonne and her children are non-signatories, we conclude that they are bound to arbitrate the survival action claims filed in their capacity as the legal representatives and estate of Carlos, because Carlos bound his heirs to the arbitration agreement.

Carlos's acceptance of the arbitration agreement survives in Yvonne's claim as representative of the estate. We hold that the trial court's refusal to compel arbitra-

tion for the survival action is a clear abuse of discretion.

### D. Waiver of Grounds

 Saw Pipes asserts alternate theories for enforcement of the arbitration agreement, but none of these theories were presented to the trial court. In its petition for writ of mandamus, Saw Pipes contends that Carlos was authorized to bind his minor children to the arbitration agreement pursuant to the Texas Family Code, that Yvonne and her children were third-party beneficiaries to the arbitration agreement, and that Yvonne and her children are estopped from avoiding arbitration under the theory of direct-benefits estoppel. Saw Pipes asserted none of these arguments at the trial court. The failure to advance these arguments at the trial court prevents Saw Pipes from asserting them in its mandamus. *See In re E. Tex. Med. Ctr. Athens,* 154 S.W.3d 933, 936 (Tex.App.-Tyler 2005, orig. proceeding); *In re Bank of America,* No. 01–02–00867–CV, 2003 WL 22310800, at *2 (Tex.App.-Houston [1st Dist.] Oct. 9, 2003, orig. proceeding) ("[I]t would be hard to conclude, without circumstances that were highly unusual or that made a trial court's ruling void, that a trial court could abuse its discretion in making a ruling for a reason that was never presented to the court."). Because Saw Pipes' arguments concerning the Texas Family Code, third-party beneficiaries, and direct-benefits estoppel were grounds never presented to the trial court, they cannot be considered in Saw Pipes' petition for writ of mandamus.

### Conclusion

By denying the motion to compel arbitration in the October 11, 2007 order, the trial court abused its discretion with regard to the survival claim and did not abuse its discretion with regard to the wrongful-death claims. Accordingly, we grant the petition for writ of mandamus for Yvonne's survival claim and deny the petition for writ of mandamus for the wrongful-death claims of Yvonne and the children. We lift the stay that we issued when the petition was filed. We are confident that the trial court will act promptly in accord with this opinion, and our writ will issue only if it does not.